**Mairin DOYLE; Brian Doyle; Margaret Doyle, Plaintiffs–Appellants,**

v.

**ARLINGTON COUNTY SCHOOL BOARD, Defendant–Appellee,**

and

**Arthur W. Gosling; John S. Davis; Virginia Department of Education, Defendants.**

No. 90–2427.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1991.

Decided Dec. 19, 1991.

As Amended Jan. 7, 1992.

Michael Jeffrey Eig, Bogin and Eig, Washington, D.C., argued (Matthew B. Bogin, Margaret A. Kohn, on brief), for plaintiffs-appellants.

John Francis Cafferky, Hunton & Williams, Fairfax, Va., argued (Thomas J. Cawley, Grady K. Carlson, on brief), for defendant-appellee.

Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and MULLEN, District Judge for the Western District of North Carolina, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Mairin Doyle and her parents, Brian and Margaret Doyle, appeal from the district court's judgment in favor of the Arlington County School Board, affirming the educational program proposed for Mairin by the Board. They argue on appeal that the district judge erred in not recusing himself, that the district court did not give proper deference to the factual findings of the hearing officer, and that there were substantive and procedural violations of the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. §§ 1400–1485.[1] We find no error on the question of recusal. However, we are of opinion the district court committed reversible error in not considering the administrative findings. Therefore, the district court judgment is vacated and the case is remanded with instructions that the district court give "due weight" to the administrative findings. We do not, at this time, consider the claimed procedural and substantive violations of the IDEA as the district court should first have an opportunity to reconsider its decision using the proper standard.

Mairin Doyle, now fourteen years old, is a profoundly learning disabled child as a result of the surgical removal of a malignant brain tumor in 1981 and subsequent chemotherapy and radiation therapy. In 1984, the Arlington County school system and the Doyles agreed on an Individualized Education Program (IEP) which provided that Mairin would attend Taylor Elementary School, a public school in Arlington County, with special education resource room support and occupational therapy for her first grade year in 1984–85. However, before the beginning of the 1984–85 school year, the Doyles changed their minds and decided to place Mairin at the Lab School of Washington, a private school for handicapped students in Washington, D.C. Mairin has attended the Lab School since first grade.

On June 28, 1988, the Doyles requested that the school system place and fund Mairin at the Lab School. At a two-day Individualized Education Program (IEP) meeting held in December 1988, the school system proposed that an appropriate program was available for Mairin in a self-contained class taught by Charlotte Albright for learning disabled students at the Nottingham Elementary School. Nottingham is a public school and is located in Arlington County, approximately two miles from Mairin's home.

The Doyles objected to the IEP and Mairin's placement at Nottingham and requested an administrative hearing seeking public payment of Mairin's Lab School tuition and expenses for the 1988–89 school year. The local hearing officer, after taking evidence, decided in favor of the Doyles. The Board appealed the decision of the local hearing officer to a state level review officer. The review officer, who took no additional evidence, found that the Board's proposed school placement at Nottingham met the mandates of the Individuals with Disabilities Education Act.

The Doyles then filed suit in the United States District Court for the Eastern District of Virginia on September 27, 1989. At trial, the full administrative record was submitted to the court. In addition, the parties presented the testimony of several witnesses. The district court agreed with the review officer and found no violation of the IDEA.

■ We find no merit to the Doyles' contention that the district judge erred in not disqualifying himself under 28 U.S.C. § 455(a). That statute provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.

---

1. At the time this case was filed, this chapter was known as the Education of the Handicapped Act (EHA). The name change became effective on October 1, 1990.

§ 455(a). The Doyles argued that since Judge Hilton had been a member of the Arlington County School Board when the Doyles first applied for special education services, his impartiality might reasonably be questioned.

Prior association with a party "does not, in itself, form a reasonable basis for questioning a judge's impartiality." *Sierra Club v. Simkins Indus.,* 847 F.2d 1109, 1117 (4th Cir.1988) (citations omitted), *cert. denied,* 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989). "[L]itigants are entitled to a judge free of personal bias, but not to a judge without any personal history before appointment to the bench." 847 F.2d at 1117.

We disagree, as a factual matter, with the Doyles' assertion that the judge was a member of the school board during a period of time "relevant to the dispute between the parents and Arlington Public Schools." Judge Hilton was a member of the Arlington School Board from 1980 through some time in 1984. The disputed facts in this case involve the years 1988–89. The only matter that dates back to 1984 is a stipulation by the parties that in 1984, the Doyles and the Arlington County school system agreed on an IEP which provided for Mairin's education at Taylor Elementary and that the Doyles decided instead to place Mairin at the Lab School of Washington. There was no dispute between the parties until June 29, 1988, when the Doyles asked that the Arlington schools pay for Mairin's education at the Lab School. Therefore, since Judge Hilton terminated his position as a member of the school board in 1984, prior to the arising of the dispute, and it not being shown that he knew anything about the facts or people involved, his impartiality may not reasonably be questioned. The district judge did not err in denying the Doyles' request that he disqualify himself under 28 U.S.C. § 455(a).

Next, we must determine what level of deference should be given to the administrative findings. Generally, in reviewing state administrative decisions in IDEA cases, courts are required to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings. *Hendrick Hudson Dist. Bd. of Educ. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982); *Spielberg v. Henrico County Pub. Sch.,* 853 F.2d 256, 258 (4th Cir.1988), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1131, 103 L.Ed.2d 192 (1989); *Burke County Bd. of Educ. v. Denton,* 895 F.2d 973, 981 (4th Cir.1990) (The reviewing court "makes a bounded, independent decision—'bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court.' ") (quoting *Town of Burlington v. Massachusetts Dep't of Educ.,* 736 F.2d 773, 791 (1st Cir.1984), *aff'd sub nom. Burlington School Comm. v. Massachusetts Dep't of Educ.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)).

The statements we have just quoted have come about by virtue of the plan for administrative and judicial review of decisions of local school boards with respect to the education of handicapped children. 20 U.S.C. § 1415(b)(2) provides in general that when parents or guardians have a complaint with respect to a decision under the statutes, they are entitled to an impartial due process hearing conducted by the state education agency or by the local education agency, as determined by state law, which shall not be conducted by an employee of the agency involved. Section 1415(c) provides that if any such hearing is conducted by the local education agency, an aggrieved party has a right to appeal to the state education agency which shall conduct an impartial review. The officer conducting such review shall make an independent decision. Section 1415(e)(2) provides that a party aggrieved by an administrative decision of the state agency may bring an action in a United States district court or a state court of competent jurisdiction, in which case the court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." With that in mind, Virginia

has enacted Va.Code § 22.1–214, which provides in subsection B that the State Board of Education shall prescribe procedures to afford due process to handicapped children and their parents or guardians under the federal statute, as well as to school divisions. Subsection C provides that the State Board of Education may provide for final decisions to be made by a hearing officer. Subsection D provides for aggrieved parties to bring their suits in court and is parallel to 20 U.S.C. § 1415(e)(2) above mentioned. Pursuant to this statute, the State Board of Education has promulgated Regulations Governing Special Education Programs for Handicapped Children and Youth in Virginia. Section 3.5 of the Regulations is entitled "Procedural Safeguards" which govern hearings and appeals. Section 3.5(A)(5) provides that upon request, dissatisfaction with a local school board decision will be heard by a hearing officer appointed according to the Hearing Officer System of Rules of Administration Promulgated by the Supreme Court of Virginia, and subsection (10)(j) provides that a decision by the hearing officer is final unless appealed. Subsection (11) provides for an administrative appeal to the state agency which is conducted by a hearing officer from the same pool of officers, and subsection (11)(b) provides that the decision by that hearing officer is final. Thus, unlike some systems of administrative review we encounter, the administrative authorities are bound by the decisions of their hearing officers.[2]

■ With this system for administrative and judicial review in mind, the question is how we apply the due weight requirement of *Rowley.* The local hearing officer in this case examined the historical facts with respect to disability with some care, as well as the statutory requirements. The reviewing officer for the State Board of Education did not do the same but stated that he would have found the same facts on the same evidence. The only point on which

the local and state hearing officers differed in any consequence was in the credibility of one of the witnesses for the plaintiffs, unless it may be said they differed on who had the burden of proof.[3] That witness was a Dr. Solomon, who was a teacher at the Lab School and had observed Mairin's current class at the Lab School as well as the proposed class at Nottingham. She testified that Mairin was one of the most, if not the most, complex learning disabled children she had ever encountered and that, in her opinion, a highly individualized program such as Lab's was the only methodology which would suffice for Mairin. Without stating any reason other than the heading of a report which Dr. Solomon had prepared and called "The Appropriate Program: The Lab School of Washington" and that Dr. Solomon had stated that, in her opinion, a highly individualized program was the only methodology which would suffice for Mairin, the reviewing officer concluded that Dr. Solomon saw her role as that of an advocate and found her testimony not to be credible. While it is true that by statute and regulation the reviewing officer is required to make an independent decision, we are of opinion that his reason for discrediting a witness who he had not seen or heard testify, in the face of the crediting of that same witness by a hearing officer who had seen and heard the witness testify, is so far from the accepted norm of a fact-finding process designed to discover truth that we think the due weight which should be accorded the decision of the reviewing fact-finding officer depending on that credibility decision is none. For example, F.R.C.P. 52(a) provides that "... due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." And we have held that "[W]e may not reverse a trier of fact, who had the advantage of hearing the testimony, on the question of credibility." *McCrary v. Runyon,* 515 F.2d 1082, 1086 (4th Cir. 1975), *aff'd,* 427 U.S. 160, 96 S.Ct. 2586, 49

---

**2.** Va.Code § 9–6.14:14.1 provides that the Executive Secretary of the Supreme Court will prepare a list of qualified hearing officers who are then assigned to cases in rotation by the Executive Secretary.

**3.** This point, however it might be decided, does not affect our decision.

L.Ed.2d 415 (1976). See also *Federal Practice and Procedure*, Wright and Miller, (1971), Civil § 2586. While federal law governs this aspect of the construction of this federal statute, we note that Virginia law on the credibility of witnesses as applied in Virginia courts is to the same effect. See *Trayer v. Bristol Parking*, 198 Va. 595, 597, 95 S.E.2d 224, 226 (1956); Va.Code § 8.01–680.

The First and District of Columbia Circuits have examined the question of due weight. In *Town of Burlington*, the court criticized the district court for having given the administrative findings the *prima facie* effect of a master's findings. That court similarly stated that fact-findings are not binding on the court even if supported by the traditional substantial evidence test. The court also stated that "weight due the administrative findings of fact must be left to the discretion of the trial court" and that the trial court "must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue." Apparently, the First Circuit would require such a response by the district court, both to findings of fact and conclusions of law of the hearing officer. 736 F.2d at 791–792. In *Kerkam v. McKenzie*, 862 F.2d 884 (D.C.Cir.1988), the court took the district court to task for its unexplained preference for the conclusions of those who opposed the hearing officer's view and stated that it remanded "for the district court to directly tackle the issue of whether the plaintiffs' showing is enough to overcome the hearing officer's conclusion that the program offered at Mamie D. Lee was 'appropriate' as that term is used in § 1412(1)." 862 F.2d at 889. Since the Supreme Court had held in *Rowley* that whether or not a program is appropriate is a matter of fact, we think the holding of *Kerkam* is very close to, if not directly, one that findings of fact by a hearing officer made in a regular manner and with evidentiary support are entitled to presumptive validity, otherwise there would be nothing

to overcome. The District of Columbia Circuit thus would give greater validity than does the First Circuit to the administrative fact-finding of the hearing officer or officers.

More in line with the view of the District of Columbia Circuit, we think that findings of fact by the hearing officers in cases such as these are entitled to be considered *prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it. See *New York Transit Authority v. Beazer*, 440 U.S. 568, 587, n. 31, 99 S.Ct. 1355, 1366, n. 31, 59 L.Ed.2d 587 (1979).

We are further of opinion that when fact-findings are regularly made and entitled to *prima facie* correctness, the district court, if it is not going to follow them, is required to explain why it does not. This holding is consistent both with *Town of Burlington*, 736 F.2d at 792, and *Kerkam*, 862 F.2d at 889. After giving the administrative fact-findings such due weight, if any, the district court then is free to decide the case on the preponderance of the evidence, as required by the statute.

Again, in deciding what is the due weight to be given an administrative decision under *Rowley*, we think a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed. When a state administrative appeals authority has departed from the fact-finding norm to such an extent as here, we think the facts so found as a result of that departure are entitled to no weight, but the facts as found by the local hearing officer are entitled to *prima facie* correctness.

In the case at hand, both the review officer and the district court failed to consider relevant findings of fact made by the hearing officer that a move from the Lab School would have an adverse effect on Mairin;[4] it "would be impossible for Mairin

4. The relevant excerpt from the hearing officer's opinion follows:

The witnesses who testified on behalf of the Doyles expressed grave concern as to the adverse effect any move to a new school and a

to receive benefit at Nottingham";[5] "Mairin requires an abnormally high degree of one-to-one instruction and integration of related services into her daily schedule" and "Nottingham ... is plainly not set up to provide this level of service"; "Nottingham is simply not equipped to provide" classes in Mairin's "areas of reactive strength"; and, Mairin cannot appropriately handle Nottingham's approach. Without considering these findings, both the review officer and the district court reached results plainly irreconcilable with them.

In order to receive benefits under the IDEA, a State must demonstrate that all children with disabilities in its educational programs have "the right to a free appropriate public education." 20 U.S.C. § 1412(1). The IDEA requires that the education of each disabled child be tailored to the needs of that child by means of an "individualized education program" (IEP). One of the determinations to be made by a reviewing court in IDEA cases is whether the IEP will give the child a free appropriate education. The "free appropriate public education" requirement is satisfied when a State provides the handicapped child with "personalized instruction with sufficient support services to permit the

child to benefit educationally from the instruction." *Board of Education v. Rowley*, 458 U.S. 176, 203, 102 S.Ct. 3034, 3049, 73 L.Ed.2d 690 (1981); see also *In re Conklin*, 946 F.2d 306, 315 (4th Cir.1991). The factual findings we have mentioned above in some detail are among those not considered by the district court and which go directly to the question of whether Arlington's IEP would give Mairin an appropriate education. Failure to consider those factual findings is reversible error.

On remand, the district court must reconsider its decision and give due weight to the state administrative findings. The court should address each such relevant factual finding made by the hearing officer and explain why, under the due weight standard, it has chosen to accept or not accept that finding.[6] The judgment of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.

new environment would have on her. This was, however, a calculation that did not appear to be a matter of concern to any of the witnesses for [Arlington Public Schools] who testified....

The teachers and other professionals at the Lab School who know Mairin (*e.g.,* Dr. Jeanne Johns, Ms. Marla Braxier, Ms. Laura Solomon) were unanimous in expressing their concern about any move from the Lab School at this time. Their views are entitled to great weight.... From the foregoing it is the conclusion of the Hearing Officer that the record does not support the contention of [Arlington Public Schools] that the proposed change in the site of Mairin's schooling is supported by the record.

5. The relevant portion of the hearing officer's opinion follows:

It appears that [Arlington Public Schools'] position is that, since its IEP and the ensuring [sic] placement of Mairin at Nottingham would meet some of Mairin's needs, she would receive some benefit from the [Arlington Public Schools'] plan. The implication is that whatever the degree of benefit would be,

however minimal, it would meet the *Rowley* standard. This is simply not true. The fact that Nottingham has certain services which Mairin must have does not make the plan appropriate. As Counsel for the Doyles argues in his brief:

[Mairin] has repeatedly demonstrated that she requires all of her services to be delivered as part of a total, self-contained structure if she is to benefit from any of them. It is clear that Mairin's level of frustration and dysfunction that she has exhibited in the past would render it impossible for her to receive benefit at Nottingham. As her mother stated when on the stand:

I don't know how you would predict, but my suspicion would be that without the intensive instruction and a drop in student-teacher ratio that the frustration level would build, the self-esteem would fall, and the social problems would increase and worsen.

6. On remand, the district court will have an opportunity to, and should, reconsider its opinion, including its decision, contrary to that of the hearing officer, that the Arlington County School Board had complied with the procedural requirements of the IDEA.