John H. FAULDERS, a minor, by and through his parents and next friends, J. David FAULDERS and Siran S. Faulders, J. David Faulders, and Siran S. Faulders, Plaintiffs,

v.

HENRICO COUNTY SCHOOL BOARD, Defendant.

No. CIV.A.3:01CV519.

United States District Court, E.D. Virginia, Richmond Division.

March 20, 2002.

Edward McCoy Wayland, Esq., Charlottesville, Counsel for plaintiffs.

Joseph Thomas Tokarz, II, Esq., Henrico County Attorney's Office, Richmond, Counsel for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the plaintiffs' motion for summary judgment and the defendant's cross-motion for summary judgment. Oral argument was heard on February 27, 2002, and this matter is ripe for decision. For the reasons stated herein, the defendant's cross-motion for summary judgment will be granted.

## I. FACTS

Plaintiff, John Faulders, was born on May 16, 1994, and is 7 years old. His parents, J. David and Siran S. Faulders, are also plaintiffs. John Faulders suffers from a high functioning form of autism, which qualifies as a disability under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* The Faulders reside in Henrico County, and John Faulders attends Dumbarton Elementary School, operated by the Henrico County School Board.

In May, 1998, the School Board classified John Faulders as eligible for special education services. During the summer of 2000, John received "Extended School Year" (ESY) special education services from the School Board. The School Board provided John with 12 hours of speech/language services and 8 hours of occupational therapy, for a total of 20 hours of services. On August 9, 2000, prior to John's beginning kindergarten at Dumbarton, an "Individual Education Program" (IEP) was drafted for John for the 2000–2001 school year. This IEP provided for 6 hours per day of one-on-one therapy in addition to 2 hours of speech/language services and 2 hours of occupational therapy each week.

John Faulders began kindergarten in September, 2000. During the school year he received therapy from Mrs. Nancy

Smith and Mrs. Carolyn Stone. Mrs. Smith has 28 years of experience as a speech/language pathologist and she has worked with autistic children since 1976. Mrs. Stone has 26 years of experience as an occupational therapist and has worked with autistic children since 1975. In addition to working with John during the 2000–2001 school year, they worked with John during the summer of 2001, and Mrs. Stone provided therapy to John during the 1999–2000 school year when John attended Kiddie Company.

During the 2000–2001 school year, Mrs. Smith and Mrs. Stone each saw John Faulders at least three times per week, and talked regularly with his teacher and his instructional assistant. According to assessment tests at the end of the 2000–2001 school year, John Faulders mastered some objectives in the 2000–2001 IEP and progressed in others. By the end of the school year, John Faulders had caught up with his peers in the areas of articulation, receptive language, and expressive language. His skills in using language appropriately in social situations, referred to as social pragmatics, improved during the 2000–2001 school year but remained weak and seriously behind his peers. Likewise, John made some improvement in handwriting, manipulative skills, and computer skills but these areas also remained weak for him.

All parties were in agreement that John Faulders needed ESY services during the summer of 2001. Mrs. Stone and Mrs. Smith proposed a peer modeling approach for John's ESY IEP, in which John would remain with his peers in order to learn and improve on social language and fine motor skills. Based on Mrs. Smith's experience with John during the school year, she believed that John had difficulty generalizing social language skills taught in individual therapy sessions to other settings, such as the classroom, playground, or home.

Therefore, rather than focus on one-on-one services, school officials believed that it was important for the ESY services to focus on improving John's communication with peers. John's parents disagreed with the peer modeling approach. The IEP team completed John's summer 2001 ESY IEP plan on June 11, 2001.

The 2001 ESY IEP provided for the services of an instructional assistant for at least three hours per day, at least four days per week, through August 18, 2001, and 10 hours of special education per week for the last two weeks of the summer plan. The ESY IEP also included five 30–minute sessions of direct occupational therapy, three 30–minute sessions of consultive occupational therapy, four 30–minute sessions of integrated speech therapy, and four 30–minute sessions of consultative speech therapy, for a total of 8 additional hours of services over the summer. Although the summer ESY IEP planned for a decrease in services from that provided during the school year, it provided for a total of 151 hours of services, an increase from the summer of 2000 during which John received a total of 20 hours of services.

The Faulders disagreed with the ESY IEP that was developed for John Faulders for the summer of 2001. During the pendency of the dispute over the appropriate services that should be provided, the Faulders provided at their own expense the therapy services they had asked the School Board to provide. This consisted of two hours of speech and language therapy each week and two hours of occupational therapy each week.

On June 12, 2001, after the ESY IEP was completed, the Faulders requested a due process hearing. The parties attempted to resolve their dispute through mediation and they postponed the due process hearing in order to complete the mediation

process. Mediation was completed on July 23, 2001, without an agreement being reached. On July 30, 2001, a due process hearing was held before a Hearing Officer as provided by the IDEA, 20 U.S.C. § 1415(f). The Officer concluded that a goal of "reasonable progress" over the summer months was acceptable and that "mastery" of skills was not required. According to the Officer, the School Board should have provided the level of services that the Faulders requested, but the Officer did not order the School Board to reimburse the Faulders for the costs of the services the Faulders paid for themselves.

The Faulders filed this action pursuant to 20 U.S.C. § 1415(i), seeking a review of the Hearing Officer's decision. The Faulders claim that the Officer erred in failing to order reimbursement of the costs of the services provided by the Faulders themselves and in failing to state the goal for the summer months as "mastery" of the various skills listed in the IEP. The School Board disputes the Faulders' arguments, claiming that the Hearing Officer erred in determining the level of therapy services required to provide an appropriate education, and arguing that the summer 2001 ESY IEP proposed by the School Board was reasonably calculated to enable John to receive educational benefit.

## II. ANALYSIS

■ The IDEA requires that states "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEA authorizes a district court to review the decision of a hearing officer in a case involving a dispute over special education services and to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). Appropriate relief includes the power to reimburse parents for private expenditures on special education services if the court ultimately determines that such services were necessary because a school board's proposed IEP failed to provide a free appropriate education. *Sch. Comm. Town of Burlington v. Dept. of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). When a district court reviews the decision of a hearing officer, the Fourth Circuit has held that the party challenging the decision of the state hearing officer bears the burden to show that the decision was erroneous. *See Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.1991). Therefore, the plaintiffs should bear the burden on the issue of the proper goal to have been stated in the IEP, while the defendant bears the burden to show that the hearing officer's conclusion regarding the proper level of services was erroneous.

■ As a preliminary matter, the plaintiffs, relying on *Reusch v. Fountain*, 872 F.Supp. 1421 (D.Md.1994), argue that the failure to develop an ESY IEP in a timely manner violated the procedural requirements of IDEA by depriving the plaintiffs of the ability to exercise their right of review of the plan. The School Board argues that plaintiffs have waived this argument by failing to raise it at prior stages of this dispute. It is not necessary to determine whether the argument has been waived because the plaintiffs have exercised their right of review under the statute. Because reimbursement is an available remedy where parents provide at their own expense the services that should have been provided by a school board, plaintiffs in this case are not prejudiced by any delay that may have been caused by untimeliness. Moreover, the Faulders parents were involved in the development of the ESY IEP as required by IDEA and all parties were in agreement as to the progress of the review of the IEP, delaying the due process hearing in order to

pursue mediation. Plaintiffs have access to a full review of the ESY IEP plan and a complete remedy for any violations that may have occurred.

■ A state satisfies its requirement of providing a "free appropriate public education" under the IDEA if it provides a child with "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. Educ. Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 203, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The IDEA requires school boards to develop an IEP for each child, which "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 204, 102 S.Ct. 3034. In reviewing a state hearing officer's administrative decision, a district court is "required to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings." *Doyle*, 953 F.2d 100, 103 (4th Cir.1991). Therefore, the Hearing Officer's decision is entitled to deference, but "a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed." *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir.1991).

■ In this case, the Hearing Officer's decision was based on the testimony of several expert witnesses. The decision did not, however, adequately consider the persons with actual interaction with John Faulders, the therapists who worked with him throughout the school year, Mrs. Smith and Mrs. Stone. Mrs. Smith and Mrs. Stone saw John Faulders regularly, they reviewed his entire school file, and they talked regularly with John's teacher and instructional assistant. Their experience and opinions as to the most appropriate IEP for John are entitled to great weight. Instead of crediting the testimony of the therapists, the Hearing Officer relied on and based his decision on the testimony of four experts: Dr. David, Dr. Oswald, Dr. Sonenklar, and Ms. Eggleston. These experts did not visit the school to observe John Faulders' program or to observe him in the school environment and with his peers, nor did they review the entire school file or talk with the teachers, assistants, the principal or John's other service providers.

Expert evaluations made after limited review and interaction with John Faulders outside the school setting cannot substitute for the therapists' experience and interaction with John Faulders on a regular basis in the school environment. Rather than credit the testimony of the therapists, the Hearing Officer specifically relied on the testimony of the experts' opinions that two hours per week of speech/language therapy and two hours of occupational therapy should have been continued through the summer. While expert testimony may be relevant, the Fourth Circuit has held that reviewing officials should not second-guess the educational judgments of school employees:

> Local educators deserve latitude in determining the individualized education program most appropriate for a disabled child. The IDEA does not deprive these educators of the right to apply their professional judgment. Rather it establishes a 'basic floor of opportunity' for every handicapped child. States must provide specialized instruction and related services 'sufficient to confer some educational benefit upon the handicapped child,' but the Act does not require 'the furnishing of every special service necessary to maximize each handicapped child's potential.

*Hartmann v. Loudoun County Bd. Educ.*, 118 F.3d 996, 1001 (4th Cir.1997) (quoting *Rowley*, 458 U.S. at 199–201, 102 S.Ct. 3034).

In this case, it is the school employees who recommended the services provided and the peer modeling approach in the summer 2001 ESY IEP based on their experience with John Faulders. The School Board witnesses as well as the experts agree that John Faulders made progress during the kindergarten school year. As the persons most familiar with John Faulders and responsible for the benefits he achieved during the school year, the Dumbarton team, including the therapists, is in the best position to know how to meet his needs during the summer months. The School Board's ESY IEP was designed to continue the progress made during the prior school year and to provide John Faulders with the educational benefit required by the IDEA.

In making his decision, the Hearing Officer placed too much, if not exclusive, reliance on the expert testimony, and failed to give appropriate consideration to the basis for each witness' opinion. His decision is therefore entitled to less deference. Additionally, the Hearing Officer's decision was admittedly rushed, having been made within time restraints imposed by the Act and exacerbated by the delays and postponements involved in this case.

Finally, because the IDEA does not require that a child be provided with services sufficient to "maximize" the child's potential or to achieve strict equality of opportunity among children, the Hearing Officer was correct in determining that the goal for the summer 2001 ESY IEP is appropriately stated as making "reasonable progress" rather than "mastery" of the skills stated. *See Rowley*, 458 U.S. at 198, 102 S.Ct. 3034. The School Board's summer 2001 ESY IEP was designed to and did provide the services necessary to achieve "reasonable progress" and to prevent John Faulders from regressing in his skills over the summer months.

## III. CONCLUSION

For the reasons stated, the Court finds that the services provided by the School Board pursuant to the summer 2001 ESY IEP were appropriate and that the proper statement of the goal for the ESY IEP is "reasonable progress." Therefore, the defendant's cross-motion for summary judgment is granted and the plaintiffs' motion for summary judgment is denied.

An appropriate Order shall enter.

### *FINAL ORDER*

For reasons stated in the accompanying Memorandum Opinion, the defendant's cross-motion for summary judgment is GRANTED and the case is DISMISSED WITH PREJUDICE. The plaintiff's motion for summary judgment is DENIED.

It is so ORDERED.

Let the Clerk send a copy of this Final Order and the accompanying Memorandum Opinion to all counsel of record.