**COUNTY SCHOOL BOARD OF HENRICO COUNTY, Virginia, Plaintiff,**

v.

**Zachary Michael PALKOVICS, a minor, By and Through his Parents and Next Friends, Robert William PALKOVICS, and Nancy Michaelle Palkovics, Defendants.**

No. CIV.A. 303CV396.

United States District Court, E.D. Virginia, Richmond Division.

Sept. 26, 2003.

702

Joseph Thomas Tokarz, II, Henrico County Attorney's Office, Richmond, VA, for County School Board of Henrico County, Virginia, plaintiff.

Adrienne Elaine Volenik, Mental Disabilities Law Clinic, T.C. Williams School of Law, University of Richmond, Richmond, VA, for Zachary Michael Palkovics, a minor by and through his parents and next friends, Robert William Palkovics, Nancy Michaelle Palkovics, defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the plaintiff's motion for summary judgment and the defendant's cross-motion for summary judgment. Oral argument was heard on September 23, 2003, and this matter is ripe for decision. For the reasons stated herein, the plaintiff's motion for summary judgment will be granted.

### I. FACTS

Defendant, Zachary Palkovics, was born on September 10, 1998. His parents, Robert W. Palkovics and Nancy M. Palkovics, are also defendants. The plaintiff is the County School Board of Henrico County, Virginia (the "School Board"). At the age of two, Zachary was formally diagnosed with autism, which qualifies as a disability under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.

In February 2001, a School Board child study committee recommended evaluations to determine Zachary's eligibility for special education. Before the School Board evaluations were completed, Zachary's parents unilaterally enrolled him at the VCU Autism Center, now known as the Faison School ("Faison"), in Richmond. Faison uses the educational methodology known as applied behavior analysis ("ABA"). The ABA methodology essentially consists of intensive, one-to-one repetitive drills by an adult with daily data collection to monitor skill acquisition. Zachary has remained in the Faison program since April 2001.

Shortly after Zachary enrolled at Faison, Dawn Hendricks, Zachary's lead teacher at Faison, recommended that his parents obtain speech and occupational therapy services for Zachary. Thereafter, the parents requested speech and occupational therapy from the School Board, and the School Board performed evaluations in order to determine Zachary's eligibility for the requested services. In October 2001, a School Board eligibility committee identified Zachary as eligible for special education and related services. The parents and the School Board then developed an Individualized Education Program ("IEP") for the 2001–2002 school year as required by the IDEA. The parents did not consent to the 2001–2002 IEP and elected to continue Zachary at Faison. After the parents rejected the October 23, 2001 IEP, the School Board developed a services plan that provided for 21 sessions of occupational therapy, 7 sessions of speech therapy, and 1 special education consultation.

In the summer of 2002, the School Board conducted new evaluations to determine Zachary's current level of performance. The Palkovics accept the accuracy of the 2002 School Board evaluations except for the speech/language assessment conducted by Lynn Blachman, a speech/language pathologist with 32 years experience and who is the current department chair for speech/language pathologists with the School Board since 1987.

Blachman performed a speech/language assessment of Zachary at Faison in June 2002 and reviewed Zachary's entire file.

Zachary's 2002 language assessment scores indicated that Zachary had made little progress at Faison in social pragmatics—the ability to communicate with others—since October 2001. Zachary's social pragmatics score in June 2002 was 13 to 18 months when he was almost 4 years old and had been at Faison for over 14 months. Blachman found that Zachary's primary means of communication had not changed since October 2001. Blachman also found that Zachary was severely restricted in his ability to interact through a functional communication system and that most of Zachary's communication was in response to the actions of his instructor. She attributed these results to the language program at Faison. However, Hendricks attributed Zachary's lack of progress in social pragmatics to developmental issues.

On August 30, 2002, and September 18, 2002, the Palkovics and the School Board met to prepare an IEP for the 2002–2003 school year. The placement discussed with the Palkovics was the preschool autism class at Twin Hickory Elementary School, operated by the School Board. The Twin Hickory class uses the educational methodology known as Treatment and Education of Autistic and Related Communication Handicapped Children ("TEACCH"). The TEACCH methodology, unlike the ABA methodology, emphasizes more of a group interaction curriculum. Dara Butler was the teacher of the Twin Hickory class. She was trained and certified in the TEACCH program in North Carolina. At the time of the administrative hearing, the Twin Hickory class had four students in the morning and five students in the afternoon. Butler had one full-time instructional assistant and one part-time assistant.

The September 18, 2002 IEP was prepared by several school officials. Blachman helped draft the language skills, social skills, and social communication goals. Carolyn Stone, with 29 years of experience as an occupational therapist, helped draft the fine motor, self-help, social skills and social communication goals. In addition to reviewing Zachary's entire school file, Stone provided direct occupational therapy to Zachary 21 times during the 2001–2002 school year and performed an occupational therapy evaluation of Zachary.

Under the September 18, 2002 IEP, the School Board would provide six hours per day, five days per week of special education, one weekly 30–minute session of direct occupational therapy service, and three weekly 30–minute sessions of speech and language therapy services. The School Board hired the full-time instructional assistant after the September 18, 2002 IEP was written in order for Zachary to attend Twin Hickory. The Palkovics do not dispute the goals and objectives contained in the September 18, 2002 IEP, but only the School Board's implementation and measurement of the goals.

On September 30, 2002, the Palkovics notified the School Board that they were rejecting the September 18, 2002 IEP and would be requesting reimbursement for Zachary's 2002–2003 school year program at Faison. In March 2003, the Palkovics requested a due process hearing before an administrative hearing officer ("Hearing Officer") as provided by the IDEA, 20 U.S.C. § 1415(f). The parties presented evidence to the Hearing Officer for three days in April 2003.

Before the Hearing Officer, the Palkovics contended that the School Board's September 18, 2002 IEP failed to provide Zachary with a free and appropriate public education ("FAPE") as required by the IDEA. In support of this, the Palkovics

presented evidence by Dawn Hendricks and Dr. Jane Carlson, who oversaw Zachary's education program at Faison. Both witnesses essentially testified that due to Zachary's severe autism, he would not receive any educational benefit from the Twin Hickory program since that program emphasizes more of a group interaction as opposed to the one-on-one interaction that Zachary needed. In addition, the Palkovics asserted that the School Board committed three IDEA procedural violations in the September 18, 2002 IEP. The purported procedural violations include the School Board's failure to include Extended School Year ("ESY") services for the summer of 2003, the failure to include a Behavior Intervention Plan ("BIP"), and the failure to include evaluation methods that would be used to evaluate Zachary's progress toward four of the five IEP goals.

The School Board, in contrast, contended that the September 18, 2002 IEP was in compliance with its obligation to provide a FAPE to Zachary under the IDEA. In addition to Stone, Blachman, and Butler, the School Board presented testimony from Dr. Barbara Driver, who has 21 years of experience in special education and is the current Director of Exceptional Education for the School Board. All four witnesses testified that the September 18, 2002 IEP was appropriate to enable Zachary to receive educational benefit had he been enrolled at Twin Hickory. The School Board argued that Zachary's condition is no different from the students at Twin Hickory, and therefore based on the success of those students, Zachary would have also received educational benefit. The School Board further refutes that its failure to include ESY services or a BIP in the September 18, 2002 IEP constituted procedural violations under the IDEA. However, the School Board conceded that its failure to include evaluation methods that would be used to evaluate Zachary's progress toward four of the five IEP goals was a technical IDEA procedural violation, but that it still did not deny Zachary a FAPE.

The Hearing Officer issued his decision on April 23, 2003. Based on the evidence before him, the Hearing Officer agreed with the Palkovics and found that the School Board failed to offer Zachary a FAPE because (1) the IEP offered to Zachary denied him educational benefit because he lacks the basic skills necessary to access the curriculum as it was offered by the School Board; (2) the IEP failed to offer ESY services despite ample evidence that Zachary regresses after only short periods away from school and that children with autism as severe as Zachary's would "result in basically having to start over" if they did not receive services over the summer; (3) the IEP failed to include criteria to measure progress toward most of the annual goals; and (4) the IEP failed to include a BIP despite ample evidence of significant behavior that Zachary exhibits that would impede his learning or the learning of others.

On May 6, 2003, the School Board filed the present action pursuant to 20 U.S.C. § 1415(i), seeking a review of the Hearing Officer's decision. The School Board claims that the Hearing Officer erred in his findings of fact and law. Specifically, the School Board claims the Hearing Officer failed to give the appropriate deference to the School Board's educators, as he was required to do. The School Board also claims that the Hearing Officer erred when he found that the School Board's failure to include ESY services, a BIP, and criteria evaluation were fatal procedural violations of the IDEA. The Palkovics filed an answer and counterclaim, which counterclaim sought to affirm the rulings of the Hearing Officer.

## II. ANALYSIS

The IDEA requires that states "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEA authorizes a district court to review the decision of a hearing officer in a case involving a dispute over special education services and to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). Appropriate relief includes the power to reimburse parents for private expenditures on special education services if the court ultimately determines that such services were necessary because a school board's proposed IEP failed to provide a free appropriate education. *Sch. Comm. Town of Burlington v. Dept. of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). When a district court reviews the decision of a hearing officer, the Fourth Circuit has held that the party challenging the decision of the state hearing officer bears the burden to show that the decision was erroneous. *See Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.1991). Therefore, the School Board bears the burden to show that the Hearing Officer failed to give due deference to the School Board's witnesses, and that his decision that the School Board's purported IDEA procedural violations constituted a denial of a FAPE to Zachary was erroneous.

A state satisfies its requirement of providing a FAPE under the IDEA if it provides a child with "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. Educ. Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 203, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The IDEA requires school boards to develop an IEP for each child, which "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 204, 102 S.Ct. 3034. In reviewing a state hearing officer's decision, a district court is "required to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings." *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 103 (4th Cir.1991). Therefore, the Hearing Officer's decision is entitled to deference, but "a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed." *Doyle*, 953 F.2d at 105. "Where a [hearing officer] has departed from the fact-finding norm to such an extent as here, the facts so found as a result of that departure are entitled to no weight." *Id.*

In this case, the Hearing Officer's decision was presumably based on the testimony of the witnesses on both sides. A review of the Hearing Officer's decision, however, suggests that the decision did not adequately, if at all, consider the testimony of the School Board's three expert witnesses: Mrs. Carolyn Stone, Mrs. Lynn Blachman, and Dr. Barbara Driver. Given these three expert's backgrounds, there is no dispute that they qualify as professional educators. But in addition to their backgrounds, all three played significant roles in their assessment of Zachary and two of them had significant roles in the development of the proposed September 18, 2002 IEP.

Stone provided direct occupational therapy to Zachary 21 times during the 2001–2002 school year and also performed an occupational therapy evaluation of Zachary. She reviewed his entire school file and was involved in the drafting of the fine motor, self-help, social skills and social

communication goals in the proposed September 18, 2002 IEP. Blachman performed a speech/language assessment of Zachary at Faison in June 2002 and reviewed Zachary's entire file and observed the Twin Hickory classroom. She also helped draft the language skills, social skills, and social communication goals in the proposed September 18, 2002 IEP. Dr. Driver did not participate in the development of Zachary's IEP, but she reviewed his school file, observed Butler's class, and saw Zachary at Faison. Based on their professional education backgrounds along with their significant roles in assessing Zachary, all three experts testified that they believed the September 18, 2002 IEP was reasonably calculated to provide educational benefit to Zachary had he been enrolled at Twin Hickory.

In addition, the Hearing Officer's decision also failed to mention the testimony of Butler regarding whether Zachary would have received educational benefit in her classroom. Butler too is a trained and certified educator. Her testimony is especially relevant because the Hearing Officer's decision strongly rested upon the notion that Zachary is very different from other students in Butler's class. Butler testified that students in her preschool autism classes have received significant educational benefit in terms of communication, play skills, number and letter identification, fine motor skills, behavior, bathroom routines and other skills. Based on her review of the evaluations of all the students in her class, and being responsible for implementing the IEPs of those students, she testified that Zachary is similar in functioning ability, cognitive ability, skill levels and communication to other students in the preschool autism class. Thus, all the School Board's witnesses' experience and opinions as to the appropriate IEP for Zachary are entitled to great weight.

But instead of crediting the testimony of these four witnesses, the Hearing Officer appears to have relied on and based his decision on the testimony of the Palkovics' two experts: Dr. Jane Carlson and Dawn Hendricks. While Dr. Carlson and Hendricks may have personal knowledge of Zachary at Faison, these two experts did not have any knowledge of the educational benefit received by other students in the Twin Hickory class because they did not perform or review any studies of those students' progress. Their conclusions were based upon the knowledge of a few students without indicating whether those students were similar or dissimilar to Zachary in terms of cognitive functioning, degree of autism, or educational performance. Nor did the Palkovics' two experts discuss with Butler how she would have implemented the September 18, 2002 IEP. While the Palkovics argue that the success of the students in the Twin Hickory program is not at issue, the Court finds it important because the past or current success of students in an autism program is a valid basis for determining whether the autism program is an appropriate placement for Zachary. Furthermore, the Palkovics argue that the School Board itself recognized that Zachary has significantly different and more severe educational issues than other children in Butler's class. In support of this, they point out that Zachary was the only child scheduled by his IEP to attend both the morning and afternoon sessions of Butler's class. However, this point only proves that the School Board fulfilled its obligations under the IDEA by providing "special education and related services designed to meet [Zachary's] unique needs and prepare [him] for employment and independent living." 20 U.S.C. § 1400. Time and time again, the Fourth Circuit has reiterated that while expert testimony may be relevant, reviewing officials should not second-guess the

educational judgments of school employees:

> Local educators deserve latitude in determining the individualized education program most appropriate for a disabled child. The IDEA does not deprive these educators of the right to apply their professional judgment. Rather it establishes a 'basic floor of opportunity' for every handicapped child. States must provide specialized instruction and related services 'sufficient to confer some educational benefit upon the handicapped child,' but the Act does not require 'the furnishing of every special service necessary to maximize each handicapped child's potential.'

*Hartmann v. Loudoun County Bd. Educ.,* 118 F.3d 996, 1001 (4th Cir.1997) (quoting *Rowley,* 458 U.S. at 199–201, 102 S.Ct. 3034). In essence, the Palkovics impermissibly seek to dictate the School Board's judgment through the hands of a private learning institution's judgment about the appropriateness of the education for Zachary.

In making his decision, the Hearing Officer placed too much, if not exclusive, reliance on the Palkovics' experts' testimony and failed to give appropriate consideration to the basis for each witness' opinion. The Hearing Officer's decision never mentioned the testimony of the School Board's expert witnesses about the educational gains obtained by other autistic students in the Twin Hickory program. The Hearing Officer had a duty, at a minimum, to give an explanation of why he did not give deference to the professional judgment of the School Board's witnesses. Furthermore, despite Blachman's expert testimony about Zachary's lack of progress at Faison, the Hearing Officer reasoned that if Zachary did not acquire the language skills in "the intense program" at Faison, it was "difficult" to "understand how the less intense program used at Twin Hickory would result in more progress." Because

the evidence in the record revealed that Faison's methodology differs from the School Board's, the Hearing Officer in essence substituted his own judgment for that of school officials. This is impermissible under the teachings of the Fourth Circuit, and therefore the Hearing Officer's decision is entitled to less deference. Accordingly, the Court grants summary judgment to the plaintiff on the issue of the Hearing Officer failed to appropriately defer to the School Board's professional educators.

■  Turning to the Hearing Officer's decision that the School Board committed three IDEA procedural violations, the Court here also finds that the Hearing Officer's decision was flawed. With regard to the School Board's failure to provide ESY services for the summer of 2003, Fourth Circuit precedent is clear that "ESY Services are only necessary to a FAPE when the benefits a disabled child gains during a regular school year will be significantly jeopardized if he is not provided with an educational program during the summer months." *MM v. Sch. Dist. of Greenville County,* 303 F.3d 523, 538 (4th Cir.2002). There is no dispute that Zachary needed ESY services for the summer of 2003. But Hearing Officer found that if ESY was "not in the IEP then it is not an included service." This, once again, was flawed reasoning. Only if the School Board had actually failed to provide Zachary with ESY services would it have violated the IDEA. Here, it cannot be shown that the School Board failed to provide Zachary with ESY services since Zachary never enrolled at Twin Hickory, thereby never gave the School Board an opportunity to actually give or deny ESY services. In any event, the Court need not engage in any further discussion here since the IDEA regulations do not require the development of ESY services by any particu-

lar date. In addition, the Court's ruling in *Faulders v. Henrico County Sch. Bd.*, 190 F.Supp.2d 849, where the Court upheld completion of an ESY IEP on June 11, 2001, for the summer of 2001, demonstrates that schools are entitled to have a reasonable time to implement ESY services. Therefore, the Court grants summary judgment to the plaintiff on this issue.

■ With regard to the second purported IDEA procedural violation, the School Board's failure to have a BIP in the September 18, 2002 IEP, the Court once again finds that the IDEA regulations do not require the inclusion of a BIP at any particular date. 20 U.S.C. § 1414(d)(3)(B)(1) provides that the IEP team "shall in the case of a child whose behavior impedes his or her learning or that of others, consider, when appropriate, strategies, including positive behavior interventions, strategies, and supports to address that behavior." Thus, the IDEA regulations did not require the inclusion of a BIP in the September 18, 2002 IEP until Zachary's behavior impeded his own learning or the learning of others at Twin Hickory. Again, evidence exists as to Zachary's aggressive behaviors. Zachary's parents and his teachers at Faison testified to this. However, Zachary was never in an environment such as that at Twin Hickory, and therefore the School Board could not adequately assess whether Zachary needed a BIP at the time of the proposed September 18, 2002 IEP. In addition, the Palkovics' witness, Hendricks, testified that BIPs are typically written a few weeks after a child has entered school so teachers can actually see what behaviors are problematic. It would strain our public school systems if they were required to maximize every IEP for every disabled child and cover for every contingency for that child. Congress did not contemplate the IDEA to have such an effect. *See Hartmann*, 118 F.3d at 1001. Therefore, the Court grants summary judgment to the plaintiff on this issue.

■ Finally, turning to the third IDEA procedural violation, the School Board's failure to include evaluation methods that would be used to evaluate Zachary's progress toward four of the five IEP goals, the Court finds that this constituted a procedural defect. When such a procedural defect exists, the Court is obliged to assess whether it resulted in the loss of an educational opportunity for the disabled child, or whether, on the other hand, it was a mere technical contravention of IDEA. *Gadsby v. Grasmick*, 109 F.3d 940, 956 (4th Cir.1997). "If a disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA, the school district has fulfilled its statutory obligations." *MM*, 303 F.3d at 534 (citing *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir.1990)).

In this case, the School Board submitted on record that the failure to check the assessment methods on four of the annual goals on the IEP was due to technical issues and clerical oversight. There is no evidence this was not true nor is there any evidence the School Board deliberately excluded the evaluation methods. Further, the School Board's failure to include evaluation methods would not have prevented Zachary from receiving a FAPE from the Twin Hickory program. The School Board offered Zachary 30 hours of special education as well as speech and occupational therapy each week. All of the School Board's witnesses testified that this would have provided Zachary educational benefit. In addition, Butler recorded data weekly about each of her students. The importance of data collection is certainly an instrumental part of an IEP, but the daily collection procedure at Faison that the Palkovics advocate cannot be imposed upon a public school. The IDEA does not

contemplate this type of data collection. Therefore, the Court grants summary judgment to the plaintiff on this issue.

The School Board also seeks review of the Hearing Officer's decision regarding whether the Faison program is an appropriate placement for Zachary and whether the program satisfies the least restrictive requirement under the IDEA. Because the Court finds that the September 18, 2002 IEP was reasonably calculated to provide Zachary with educational benefit, the Court need not consider this issue.

### III. CONCLUSION

For the reasons stated, the Court finds that the Hearing Officer failed to give due deference to the School Board's witnesses, and that his decision that the School Board's purported IDEA procedural violations constituted a denial of a FAPE to Zachary was erroneous. Therefore, the plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied.

An appropriate Order shall enter.

### FINAL ORDER

For reasons stated in the accompanying Memorandum Opinion, the plaintiff's motion for summary judgment is GRANTED and the defendant's cross-motion for summary judgment is DENIED. The Hearing Officer's decision is REVERSED, and final judgment is ENTERED for the plaintiff.

It is so ORDERED.

Let the Clerk send a copy of this Final Order and the accompanying Memorandum Opinion to all counsel of record.