**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-1411**

BOARD OF EDUCATION OF MONTGOMERY COUNTY,
MARYLAND,

Plaintiff - Appellant,

versus

S.G., a minor by her parent and next friend,
N.G.; N.G.,

Defendants - Appellees.

-----------------------------------------------

THE NATIONAL DISABILITY RIGHTS NETWORK; THE
COUNCIL OF PARENT ATTORNEYS AND ADVOCATES,

Amici Supporting Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Deborah K. Chasanow, District Judge.
(8:05-cv-00323-DKC)

Argued:  March 13, 2007                Decided:  April 25, 2007

Before WILLIAMS and MOTZ, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jeffrey Alan Krew, Ellicott City, Maryland, for Appellant.
Mark B. Martin, Baltimore, Maryland, for Appellees.  **ON BRIEF:**

Kristen Bowen Perry, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Amici Supporting Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After a four day hearing, an Administrative Law Judge found that a fifteen year old girl, S.G., suffered from an emotional disturbance that made her eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"). The Board of Education of Montgomery County challenged that holding in an action in federal district court. The Board contended that the ALJ erred in her findings of facts, and that S.G. did not satisfy the IDEA's eligibility requirements for receiving a special education because her disability did not affect her educational performance. The district court granted summary judgment to the girl's parents. The Board now appeals, again contending that the ALJ's factual findings were incorrect and that even if S.G. has an emotional disturbance, it has not affected her educational performance and does not require that she receive a special education. We agree with the district court that the ALJ's findings of facts were regularly made and are entitled to deference and that S.G. is eligible for special education services. Accordingly, we affirm the judgment of the district court.

I.

S.G. was born on April 1, 1992, and has lived with her foster parents and legal guardians, N.G. and R.G., since she was six days old. She was diagnosed as HIV positive at the age of four months,

3

but not informed of that diagnosis until the summer of 2002, before beginning fifth grade.  Prior to fifth grade, S.G. was bright, motivated, sociable, well-organized -- and a successful student at Montgomery County Public Schools.  During the 2002-03 school year, S.G. attended fifth grade at Cashell Elementary School (the local public school).  S.G.'s behavior began to change that year -- she reportedly stole money, wrote disturbing, suicidal ideas, and had difficulties staying organized and completing assignments at school.

S.G. began sixth grade the following year at Redland Middle School (again, the local public school).  N.G. (her foster mother) testified that S.G. began to wet her pants and had to wear diapers, made violent and hyper-sexual writings, told her mother that she was hearing voices instructing her to harm herself, and struggled with memory and motivation.  On December 21, 2003, S.G. cut her legs and put pins in her ears -- and told her mother she had heard voices instructing herself to stab herself.  Following this incident, S.G. was hospitalized at five different institutions between December 22, 2003 and February 16, 2004.  She was diagnosed at several of them with a psychotic order not otherwise specified.

S.G. missed twenty-two days of school in January and February, 2004 during these hospitalizations.  Before S.G. returned to school, N.G. met with school officials, who developed a plan to ease S.G.'s transition back to Redland.  Pursuant to the plan, S.G.

would have her assignment notebook monitored, and be given class notes, increased time for homework and tests, an adjusted work load, and a "flash pass" so that she could leave class whenever she heard voices and wanted to go to the health room. S.G. returned to Redland on February 17, and in the following weeks used the flash pass to leave class and return home from school early on four days, allegedly because she was hearing voices and was deeply upset. Although S.G. did not miss school or use the flash pass in April, in May her problems became worse: in incidents on May 5, 6, 10, and 11, she used the flash pass because of voices telling her to kill herself, told her foster mother that she was going to stab herself in the heart; school authorities did not permit her to ride the bus home or to return to school until she received certification from a mental health professional that she was not a threat to herself. S.G. was readmitted to Johns Hopkins on May 12, and remained hospitalized through June 14 -- missing the remainder of the school year at Redlands. She thus missed fourteen days in May and left early on five others; and missed eleven days of school in June.

S.G.'s academic performance suffered during sixth grade as her emotional disturbance worsened. Her grades were strong in the first quarter, but slipped when she began having problems in the second. For the third and fourth quarters, S.G.'s grades were again satisfactory. However, these grades were based only on the work that S.G. actually completed; the assignments and lessons that

5

she missed or failed to complete were not factored in to the grades. The testimony of S.G.'s teachers shows how this grading method grossly inflated S.G.'s grades. The English teacher who gave S.G. a failing grade of "E" in the second quarter because, although S.G. had missed only a few days, "she hadn't completed enough of the curriculum to have mastered it," nonetheless gave her a "B" in the fourth quarter when S.G. missed much more of the curriculum, because the teacher counted only her completed assignments in calculating her grade.

After S.G. was readmitted to the hospital in the spring of 2004, N.G. requested that the school complete a special education screening for S.G. The school held a screening meeting on May 25th, around which time N.G. provided the school with a copy of a medical discharge summary indicating a diagnosis of schizophrenia for S.G. S.G. performed well on standard psychological and educational assessments, and although S.G.'s teachers found her to be a capable student and listed various academic strengths, they also observed that she "zoned out" a lot during class, could be in a "daze," and was "withdrawn," "distracted," and "out of it."

II.

N.G. requested, at an Individualized Education Program ("IEP") meeting on June 22, 2004, that S.G. be found eligible for special educational services because of her emotional disturbance. The

school found evidence that S.G. exhibited inappropriate types of behavior or feeling for a long period of time and to a marked degree and so had an emotional disturbance under the IDEA, but concluded that S.G. did not suffer an adverse educational impact because of this condition so was not eligible for special education services.

On August 19, 2004, N.G. requested an administrative due process hearing to contest the School Board's decision not to designate S.G. as eligible for special education. N.G. contended that the School Board had failed to identify S.G. as a child with a disability during the 2003-04 school year -- and asked that S.G. be provided with an appropriate educational program for the 2004-05 school year. In the course of a four-day hearing in October and November 2004, the ALJ considered written evidence and testimony from S.G.'s teachers and psychiatrists, school officials, and medical experts who had treated and examined S.G. In a fifty-eight page opinion, the ALJ found that S.G. suffered from an emotional disturbance -- namely, schizophrenia -- and that this emotional disturbance adversely affected her educational performance in a regular classroom.

On the basis of these findings, the ALJ concluded that S.G. was eligible under the IDEA for special education services in a therapeutic classroom. The ALJ found that the school system had not committed violations with respect to the 2003-04 school year,

7

but that it had committed a substantive violation in not identifying S.G. as eligible for special education services for the 2004-05 school year. The ALJ thus ordered the School Board to fund S.G. to attend a therapeutic school. The School Board then placed S.G. at a therapeutic program at the Lodge School in January 2005, where she currently remains, and has allegedly performed well academically.

The School Board brought this action in federal court on February 3, 2005, pursuant to 20 U.S.C. § 1415(i)(2)(A) (2000). Before the district court, the Board challenged the ALJ's findings of fact, arguing that the ALJ "gave no deference to Plaintiff's experts, who are school officials," did not "devot[e] enough of her opinion to discussing the testimony of plaintiff's witnesses," and "failed to address the fact that Defendants bore the burden of proof at the administrative level." See Bd. of Educ. of Montgomery County v. S.G., No. Civ. A. DKC 2005-0323, 2006 WL 544529, at *21-22 & n.16 (D. Md. Mar. 6, 2006). The Board disputed the ALJ's conclusion that S.G.'s emotional disorder caused "an educational impact," and it claimed that "the ALJ erred in ordering a specific placement for S.G." at a therapeutic school. Id. at 20.

The parties cross-moved for summary judgment in June and July 2005. The district court granted summary judgment to N.G. on March 6, 2006. The court rejected the Board's challenges to the ALJ's fact-finding process, concluding from the record that the ALJ had

placed the burden on the correct party, "that the ALJ heard and considered extensive testimony from both Plaintiff's and Defendants' witnesses," that the Board's attorney had praised the ALJ for taking "copious notes," and that the ALJ's opinion had "summarized the testimony of all eight of Plaintiff's witnesses" and "discussed in detail her reliance as well as her rejection of particular testimony and evidence." Id. at 21-22.

The district court also agreed with the ALJ's finding "that S.G. suffered an educational impact because of her emotional disturbance." Id. at 29. Further, the district court rejected the Board's challenge to S.G.'s placement at a therapeutic school because "it was the [Board's] IEP team who determined that the Lodge School was a proper placement for S.G." and, moreover, "there was ample evidence on the record that a therapeutic environment was an appropriate placement for S.G." Id. at 33.

The School Board has appealed, again alleging that the ALJ's fact-findings were not regularly made and should not be considered prima facie correct; that S.G. was not eligible for special education services under the IDEA because even if she had an emotional disturbance it did not impact her educational performance; and that the School Board should not be required to fund S.G. at the Lodge School.

9

After careful review of the record, the parties' written and oral arguments, and the governing legal principles, we conclude that the ALJ's factual findings were regularly made, and that the district court correctly decided the legal issues before it. Accordingly, we affirm largely on the reasoning of the district court. See Bd. of Educ. of Montgomery County v. S.G., No. Civ. A. DKC 2005-0323, 2006 WL 544529 (D. Md. Mar. 6, 2006).

We add two further points to respond to arguments the Board has advanced on appeal. First, the Board contends that our precedent requires deference to the school's educational professionals. To be sure, our cases have stated that district courts should not, when confronted with a cold administrative record, substitute their judgment for those of educational professionals. See, e.g., A.B. ex rel. D.B. v. Lawson, 354 F.3d 315, 325 (4th Cir. 2004) ("The district court ignored the principles animating IDEA and wrongfully dismissed the ALJ's findings of fact."). We have rejected the argument, however, that the hearing officer must always defer to the school's experts. While our precedent "requires the district court to explain its reasons for rejecting the findings of the hearing officer; it does not require the hearing officer to explain in detail its reasons for accepting the testimony of one witness over that of another." County School Bd. of Henrico County, Virginia v. Z.P. ex rel. R.P.,

399 F.3d 298, 306 (4th Cir. 2005) (citing Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991)).  Here, the ALJ, after carefully considering all of the testimony, did in fact "discuss[] in detail her reliance as well as her rejection of particular testimony and evidence."  See S.G., 2006 WL 544529, at *22. Accordingly, the district court was not -- and we are not -- free to reject the ALJ's regularly made findings of facts.

Second, the Board contends that the hearing officer erred in considering the impact of S.G.'s frequent absences from class on her educational performance, because it alleges that those absences were merely "a result of S.G.'s medical condition" and so "could not be addressed by special education."  The Board analogizes S.G. to a student with cancer, and quotes its own witness for the claim that "one would not 'treat schizophrenia with special education any more than you would treat cancer with special education.'"  See Reply Brief of Appellants at 29.  Extensive evidence in the administrative record requires rejection of this argument.  That evidence demonstrates that the public middle school environment aggravated S.G.'s symptoms and contributed to her hearing voices, zoning out, wanting to hurt herself, leaving class by using the flash pass, and being absent from school.  S.G.'s psychiatrist testified that S.G. and students like her with schizophrenia are not "able to cope well with . . . the usual stresses in an ordinary classroom" and "do best when they're in a low level stress, a lot

11

of support, a lot of structure," so that if S.G. were returned to the mainstream public school "eventually, probably sooner rather than later, [S.G.] would be hearing voices again." Thus, S.G. is not analogous to a student with cancer or a purely "medical condition," because her classroom setting affects the symptoms of her emotional disturbance and as a result her ability to receive the appropriate education she is due.

## IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.