**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-2236**

SUSAN AVJIAN; ROBERT AVJIAN; D. A., a minor,
by her parents and next friends,

Plaintiffs - Appellants,

versus

JERRY D. WEAST, (officially as),
Superintendent, Montgomery County Public
Schools; MONTGOMERY COUNTY BOARD OF EDUCATION,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. William Connelly, Magistrate Judge.
(CA-03-3629-WGC)

Submitted: May 16, 2007      Decided: July 12, 2007

Before WILLIAMS, Chief Judge, WILKINSON, Circuit Judge, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Michael J. Eig, Haylie M. Iseman, MICHAEL J. EIG & ASSOCIATES, PC,
Chevy Chase, Maryland, for Appellants. Jeffrey A. Krew, JEFFREY A.
KREW, LLC, Ellicott City, Maryland; Zvi Greismann, MONTGOMERY
COUNTY PUBLIC SCHOOLS, Rockville, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Appellant parents and their child appeal the district court's order that granted summary judgment in favor of the Montgomery County School System in their action under IDEA. Under the IDEA, the federal government provides qualifying states with funding for the education of disabled children. States must make available a "free appropriate public education . . . to all children with disabilities residing in the State." 20 U.S.C. § 1412(a) (2000). A "free appropriate public education" (FAPE) consists of special education and related services tailored to the specific child's educational needs according to an Individualized Education Plan ("IEP"). See 20 U.S.C. § 1401(8), (11) (2000). These services must be provided to a disabled child in the least restrictive and appropriate environment. 20 U.S.C. § 1412(a)(5)(A).

The IEP is prepared by an IEP Team, which consists of a representative of the school district, the child's teacher, the parents or guardian and, where appropriate, the child herself. 20 U.S.C. § 1414(d)(1)(B). Parents who are dissatisfied with the education their disabled child is receiving or the IEP that is presented, are entitled to an administrative due process hearing. See 20 U.S.C. § 1415(f)(1) (2000). The IDEA permits a party adversely affected by an administrative decision to obtain judicial review and gives courts "broad discretion," Sch. Comm. of

- 2 -

Burlington v. Dep't of Educ., 471 U.S. 359, 369 (1985), to grant "such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). In a judicial proceeding under the IDEA, a reviewing court is obliged to conduct a de novo review, while giving due weight to the state administrative proceedings. See 20 U.S.C. § 1415(i)(2)(B); MM ex rel. DM v. Sch. Dist. of Greenville County, 303 F.3d 523, 530-31 (4th Cir. 2002) (citing Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991)).

The parents of D.A. initiated a due process hearing, claiming that Montgomery County Public School System ("MCPS") failed to provide D.A. with a FAPE. The issues on appeal are: (1) Whether defendants' failure to fully fund D.A.'s placement denied her a FAPE; (2) Whether the ALJ erred in failing to consider evidence; and (3) Whether the Avjians' due process rights were violated. The district court granted summary judgment in favor of the defendants.[1] We affirm.

I.

It is undisputed by the parties that D.A. is a child with emotional and educational disabilities who is entitled to special education and related services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* D.A.'s parents pursued the option of a FAPE through MCPS. In

---

[1]The parties consented to exercise of the district court's jurisdiction by a U.S. Magistrate Judge.

response to the parents' inquiry, an IEP Team meeting was held, at which D.A.'s parents, D.A.'s psychologist, and MCPS personnel were present.  D.A.'s psychologist testified the only placement that could meet D.A.'s needs was a therapeutic, residential school. D.A.'s parents expressed their desire for a residential placement as well.  The Team explained to the Avjians that the John L. Gildner Regional Institute for Children and Adolescents ("RICA") had a residential program available to some students and that it would be up to RICA to decide if D.A. was eligible.  It was the Avjians' impression from the meeting that the IEP team supported their request to have D.A. placed in a residential facility. However, the Team recommended only a private day school both at the meeting and on the written IEP.  D.A.'s parents did not object. Financing for either type of placement was never discussed.  The team identified several possible schools that would provide this service, including RICA.[2]

On September 3, 2002, D.A.'s parents signed a form indicating their approval of the IEP, which clearly recommended only a day school placement.  D.A. interviewed and was accepted at RICA as a residential student in the Fall of 2002.  In November 2002, D.A.'s parents received a bill from the Maryland State Department of Health and Mental Hygiene ("DHMH") for the

---

[2]RICA had both a day school and residential component, however, the IEP clearly recommended only the day school.

residential component of D.A.'s placement at RICA, at a cost of $571 per day. D.A.'s parents disputed the charges, believing that MCPS should pay for the residential service as part of D.A.'s free public education.

On March 10, 2003, D.A.'s parents requested a due process hearing and mediation, claiming that there was a disparity between the written IEP and the IEP meeting proceedings. The Avjians further asserted that they were never told that they would be liable for the residential costs of any potential placement. Their request for mediation was denied. In June 2003, an Administrative Law Judge ("ALJ") heard the parents' claim that D.A. was denied a FAPE because MCPS failed to provide necessary residential services.[3] George Moore, an MCPS official present at the IEP Team meeting, testified the team decided D.A. did not need residential placement for educational purposes. He further testified D.A.'s parents did not object to the written IEP at the meeting. The ALJ found his testimony credible.

The ALJ concluded the written IEP accurately reflected the IEP team meeting proceedings and that MCPS' failure to explain that the Avjians would be responsible for paying any residential placement costs did not constitute a violation of due process. Having exhausted all administrative remedies, D.A.'s parents filed an action in the district court. The Avjians requested permission

---

[3]D.A.'s parents were not represented by counsel.

- 5 -

to depose George Moore. The court allowed the deposition over defendants' objections, however, the district court refused to consider the deposition testimony as additional evidence under Springer v. Fairfax County Sch. Bd., 134 F.3d 659 (4th Cir. 1988).

The district court concluded MCPS complied with all procedures in the IDEA and that D.A. was not denied a FAPE. The court further found that MCPS was not financially liable for D.A.'s residential treatment costs since the IEP team had referred D.A. only for special education day school. The parents' desire to see D.A. placed in a residential facility did not make MCPS liable for the cost. Accordingly, the district court granted defendants' motion for summary judgment.

II.

This court reviews de novo an order granting summary judgment. Bond v. Blum, 317 F.3d 385, 394 (4th Cir. 2003). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The evidence is viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, a party cannot create a genuine issue of material fact through mere speculation or compilation of inferences. Runnebaum v. Nationsbank of Md., 123 F.3d 156, 164 (4th Cir. 1997). When a moving party has met its

burden, the non-moving party must convince the court that, upon the record as a whole, a rational trier of fact could find for the non-moving party.  Anderson, 477 U.S. at 248-49.

A.

The Avjians' first argument on appeal is that the district court erred in accepting the factual findings made by the ALJ.  The Avjians contend that the ALJ misunderstood or ignored the facts on several material issues.  They further claim that the district court should have cured this error by considering their additional evidence obtained in the Moore deposition.

Whether the district court has accorded "due weight" to the administrative proceeding is a mixed question of law and fact reviewed by this court de novo.  MM, 303 F.3d at 531.  This court need not defer to factual recitations made by a district court from the administrative record.  Id.  This court, however, must examine the entire record, including any additional evidence considered by the district court, and afford due weight to the administrative determinations.

We find the district court did not err in accepting the factual findings of the ALJ.  The majority of facts relied upon by the ALJ were supported by the record through corroborating documents, letters, and witness testimony.  The ALJ found Moore's testimony comprehensive and credible.  To the extent the Avjians are challenging the ALJ's credibility findings, this court will not

reverse a trier of fact who had the advantage of hearing the testimony on the question of credibility. Doyle, 953 F.2d at 104. Nor is there any evidence in the record to suggest that this court should do so.

The Avjians claim the outcome would have been different had the district court considered Moore's deposition as additional evidence. Whether to allow additional evidence under § 1415(e)(2) "must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo. Town of Burlington v. Dep't of Educ., 736 F.2d 773, 791 (1st Cir. 1984). This court announced its strict approach in Springer, 134 F.3d at 667, that "'testimony from all who did, or could have, testified before the administrative hearing' would be 'an appropriate limit in many cases.'" (citing Town of Burlington, 736 F.2d at 790). We disagree with the Avjians' contention that Moore's testimony was unavailable at the administrative hearing because the ALJ refused to let the Avjians question Moore in the areas of instructions from his superiors, quality assurance issues, and experiences of the average family. Moreover, these issues were not addressed in the deposition. We therefore affirm the district court's refusal to consider the deposition testimony.

B.

The Avjians next argue that requiring them to pay for D.A.'s residential placement constitutes a failure to provide D.A.

- 8 -

with a FAPE.  Whether a child is receiving a FAPE is a two-part inquiry.  A court must determine first whether the state has "complied with the procedures set forth in the Act," and second, whether the IEP is "reasonably calculated to enable the child to receive educational benefits."  Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982).  Courts are reluctant to second-guess the judgment of educational professionals once a procedurally proper IEP has been formulated.  See id.

The Avjians first contend that although the IEP team decided a residential treatment was best for D.A., this decision was not reflected on the written IEP.  The written IEP clearly stated that D.A. did not need residential treatment to meet her educational needs.  It appears that in response to her parents' requests for residential treatment, the IEP Team recommended the RICA program, but clearly documented on the IEP that D.A. was only referred to a day program.  D.A.'s parents indicated their agreement with the IEP by signing it.  This Court has found that when evaluating whether a school district offered a FAPE, a court generally must limit its consideration to the terms of the IEP itself.  See A.K. ex rel. J.K. v. Alexandria City Sch. Bd., No. 06-1130, ____ F.3d ____, 2007 WL 1218204, at *7 (4th Cir. Apr. 26, 2007).  Expanding the scope of the offer to include comments made during the IEP process undermines the important policies served by requiring a formal written IEP.  Id.  Accordingly, we reject the

Avjians' invitation that we ignore the plain terms of the written IEP to which they give their written assert.

The Avjians next assert that the IEP team did not properly consider D.A.'s educational and non-educational needs. We disagree. The IDEA clearly states that its purpose is to determine the "*educational needs* of [a child with a disability]." 1414(a)(1)(C)(i)(II) (emphasis added). Nowhere does it state that the IEP team should evaluate a child's non-educational needs and/or make any determination as to treatment for those needs. The purpose of the IEP Team meeting was to determine D.A.'s educational needs and how to meet those needs in the least restrictive environment.

The IDEA establishes a "basic floor of opportunity" for every handicapped child. Rowley, 458 U.S. at 201. "States must provide specialized instruction and related services 'sufficient to confer some educational benefit upon the handicapped child.'" Hartmann v. Loudoun County Bd. of Educ., 118 F.3d 996, 1001 (4th Cir. 1997) (citing Rowley, 458 U.S. at 200-01). The IDEA, however, does not require a school district to provide the best education. MM, 303 F.3d at 527. In other words, once a FAPE is offered, the school district need not offer additional educational services. Id.

Finally, the Avjians assert the IEP team did not provide them with adequate information and notice regarding the parents'

financial responsibility.  Nowhere does the statute require the IEP Team to discuss financing.  Under the IDEA, D.A. is entitled to a FAPE, which is determined through the IEP process.  That FAPE was a private day school.  Any additional treatment, even if requested by the parents, is not the financial responsibility of MCPS.

### C.

The Avjians set forth a detailed argument that the MCPS has adopted a pervasive and longstanding process for recommending residential placements, referring students to RICA, and then abdicating their responsibility to fund the residential placements. As the Government notes, both the ALJ and the district court have refused to allow the Avjians to develop this argument through additional evidence.  We agree with this determination.

### III.

In sum, the IEP Team clearly recommended a day school placement and the Avjians indicated their agreement by signing the written plan.  MCPS followed the statutory procedures set forth in the IDEA.  Accordingly, we find there is no genuine issue of material fact.  We therefore affirm the judgment of the district court.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED