**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

J. P., a minor, by and through his
parents and next friends, Karl
Peterson and Linda Peterson; KARL
PETERSON; LINDA PETERSON,
*Plaintiffs-Appellees,*

v.

COUNTY SCHOOL BOARD OF HANOVER
COUNTY, VIRGINIA,
*Defendant-Appellant.*

No. 06-2068

VIRGINIA SCHOOL BOARDS
ASSOCIATION,
*Amicus Supporting Appellant,*

CHILDREN'S LAW CENTER, of the
University of Richmond School of
Law; VIRGINIA OFFICE FOR
PROTECTION AND ADVOCACY,
*Amici Supporting Appellees.*

J. P., a minor, by and through his
parents and next friends, Karl
Peterson and Linda Peterson; KARL
PETERSON; LINDA PETERSON,
*Plaintiffs-Appellees,*

v.

COUNTY SCHOOL BOARD OF HANOVER
COUNTY, VIRGINIA,
*Defendant-Appellant.*

No. 07-1320

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(3:06-cv-00028-REP)

Argued: December 6, 2007

Decided: February 14, 2008

Before NIEMEYER and TRAXLER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Vacated and remanded by published opinion. Judge Traxler wrote the
opinion, in which Judge Niemeyer and Senior Judge Hamilton joined.

**COUNSEL**

**ARGUED:** (No. 06-2068) John Francis Cafferky, BLANKINGSHIP
& KEITH, P.C., Fairfax, Virginia, for Appellant. Philip Carter Stro-
ther, Richmond, Virginia, for Appellees. (No. 07-1320) Bradford
Allen King, HARRELL & CHAMBLISS, Richmond, Virginia, for
Appellant. Robert Jackson Allen, STROTHER LAW OFFICES,
P.L.C., Richmond, Virginia, for Appellees. **ON BRIEF:** (No. 06-
2068) Yvonne S. Wellford, OFFICE OF THE COUNTY ATTOR-
NEY, Hanover, Virginia; Bradford A. King, HARRELL & CHAM-
BLISS, Richmond, Virginia, for Appellant. Robert Jackson Allen,
STROTHER LAW OFFICES, P.L.C., Richmond, Virginia, for
Appellees. Kathleen S. Mehfoud, REED SMITH, L.L.P., Richmond,
Virginia, for Amicus Supporting Appellant. Adrienne E. Volenik,
Director, Jovonni Armstead, Kathleen Murphy, Rebecca Rockwood,
Andrea Tompkins, Jerrell Williams, Third Year Law Students, Dis-
ability Law Clinic, Children's Law Center, RICHMOND SCHOOL
OF LAW, University of Richmond, Virginia; Jonathan Martinis, VIR-
GINIA OFFICE FOR PROTECTION AND ADVOCACY, Rich-
mond, Virginia, for Amici Supporting Appellees. (No. 07-1320)
Yvonne S. Wellford, OFFICE OF THE COUNTY ATTORNEY,

Hanover, Virginia, for Appellant. Philip Carter Strother, Richmond, Virginia, for Appellees.

---

**OPINION**

TRAXLER, Circuit Judge:

In this case arising under the Individuals with Disabilities Education Act ("IDEA"), the parents of J.P., a young boy with autism, challenged the sufficiency of an individualized education program ("IEP") developed for J.P by the County School Board of Hanover County, Virginia. After the state hearing officer concluded that the IEP was adequate, the parents sought to overturn that decision in federal district court. Examining the case *de novo*, the district court determined that the hearing officer's factual findings were not regularly made and were entitled to no deference. The district court concluded that the IEP for J.P. was not adequate, that the private school where the parents had enrolled J.P. was an appropriate placement, and that the School Board was therefore obligated to pay the costs of the private school. In a subsequent order, the district court awarded the parents, as prevailing parties, attorneys fees and costs of more than $180,000. The School Board appeals the district court's decision on the merits of the parents' IDEA claims (appeal no. 06-2068) and separately appeals the attorney's fee order (appeal no. 07-1320).

We conclude that the district court failed to give the required deference to the state hearing officer's decision, and we therefore vacate the district court's order (no. 06-2068) and remand with instructions that the district court reconsider the question of the appropriateness of the IEP proposed for J.P. We likewise vacate the district court's order awarding attorney's fees and costs (no. 07-1320), and we remand for reconsideration of the parents' entitlement, should they remain prevailing parties, to an award of attorney's fees.

### I.   Appeal No. 06-2068

Under the IDEA, all states receiving federal funds for education must provide disabled schoolchildren with a "free appropriate public

education" ("FAPE"). 20 U.S.C.A. § 1412(a)(1)(A) (West Supp. 2007). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, . . . supported by such services as are necessary to permit the child to benefit from the instruction." *Board of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982) (internal quotation marks omitted).[1]

A school provides a FAPE by developing an IEP for each disabled child. Appropriate IEPs "must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." *MM v. School Dist.*, 303 F.3d 523, 527 (4th Cir. 2002); *see* 20 U.S.C.A. § 1414(d)(1)(A). An IEP is sufficient if it is "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207.

A.

J.P. was born on January 4, 1994, and was diagnosed as autistic at eighteen months. In 2001, J.P. began school as a first grader in a special education program at Battlefield Park Elementary School in Hanover County. The parents were not satisfied with the progress J.P. was making at Battle Creek, and in May 2003, the parents enrolled him in the Spiritos School, a private school specializing in the education of autistic children.

Spiritos uses the "applied behavioral analysis" ("ABA") approach to teaching autistic children. The ABA approach is a form of the Lovaas methodology, which "relies heavily on extremely structured teaching and comprehensive data collection and analysis." *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 845-46 (6th Cir. 2004); *see G v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 300 n.6 (4th Cir. 2003). The central component of the Lovaas-ABA methodology is

---

[1]The *Rowley* Court was considering the requirements of the "Education of the Handicapped Act." *See Board of Educ. v. Rowley*, 458 U.S. 176, 179 (1982). That act was amended in 1990 and retitled as the IDEA. *See Gadsby ex rel. Gadsby v. Grasmick*, 109 F.3d 940, 942 n.1 (4th Cir. 1997).

"discrete trial" training or therapy, which "involves breaking down activities into discrete tasks and rewarding a child's accomplishments." *MM*, 303 F.3d at 528 n.8. Research has indicated that early intervention with ABA methods can be very successful. *See Deal*, 392 F.3d at 845 n.2.

J.P. made significant gains at Spiritos during the following year. The parents, however, returned him to the public school system for the 2004-05 school year, because they wanted him to succeed in the public school setting.

The IEP developed by the School Board for the 2004-05 school year (the "2004 IEP") placed J.P. in a self-contained special education class at Rural Point Elementary School. An addendum to the 2004 IEP provided for an instructional aide to be assigned to J.P. exclusively, thus giving J.P. one-on-one instruction. The IEP stated that the aide would "receive[ ] training in methods that are proven to work" with autistic children, and that the Board would "arrange for the aide to receive training from a Certified Behavior Analyst from a program such as the Faison School."[2] J.A. 192. The addendum also stated that J.P.'s academic setting "will include opportunities for [J.P.] to receive discrete trials when and where the instructional personnel deem appropriate." J.A. 192.

Although the parents agreed to the 2004 IEP, they quickly became concerned about J.P.'s progress at Rural Point. By June 2005, the parents had concluded that J.P. was regressing rather than progressing under the 2004 IEP. The School Board, however, believed that J.P. was making sufficient progress under the IEP, and the board proposed for the 2005-06 school year an IEP (the "2005 IEP") that was essentially the same as the 2004 IEP. Because the parents believed that J.P. had made no progress under the 2004 IEP, they also believed that he would not make progress under the largely identical 2005 IEP. The parents requested that J.P. be placed (at public expense) in a private specialty school like Spiritos. When the county denied that request, the parents enrolled J.P. in the Dominion School, a private school for

---

[2]The Faison School is a private school that uses ABA methodology to teach autistic children. *See County Sch. Bd. v. Z.P.*, 399 F.3d 298, 301 (4th Cir. 2005).

autistic children. In accordance with their rights under the IDEA, *see* 20 U.S.C.A. § 1415(f)(1), the parents sought a due process hearing to determine whether the proposed 2005 IEP was adequate to provide J.P. with a FAPE.

After considering the evidence presented during the due process hearing, the state hearing officer rejected the parents' request that the School Board reimburse them for the cost of J.P.'s tuition at Dominion, concluding that J.P. had made more than minimal progress during the 2004-2005 school year and that both the 2004 IEP and the proposed 2005 IEP were appropriate under the IDEA and governing law. The parents then commenced this action in federal district court seeking review of the hearing officer's ruling.

The district court determined that the hearing officer's factual findings were not regularly made and were therefore entitled to no deference. Resolving the underlying factual questions *de novo*, the district court concluded that J.P. had made no progress at Rural Point under the 2004 IEP. And because the 2005 IEP was, in essence, a continuation of the 2004 IEP, the district court concluded that the 2005 IEP was not reasonably calculated to enable J.P. to receive educational benefits. The district court concluded that Dominion was an appropriate placement for J.P. and that the School Board must therefore reimburse the parents for the costs of educating J.P. at Dominion. This appeal followed.

B.

The appropriateness of an IEP is the central issue in most IDEA cases. Whether an IEP is appropriate is a factual question, *see DiBuo v. Board of Educ.*, 309 F.3d 184, 188 n.8 (4th Cir. 2002), one that the IDEA charges the district court with answering based on the preponderance of the evidence, *see* 20 U.S.C.A. § 1415(i)(2)(C)(iii); *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 384 (4th Cir. 2000). The IDEA, however, also requires the district court to "receive the records of the administrative proceedings," 20 U.S.C.A. § 1415(i)(2)(C)(i), an obligation that "carries with it the implied requirement that due weight shall be given to these proceedings." *Rowley*, 458 U.S. at 206.

In this circuit, we interpret *Rowley*'s "due weight" requirement to mean that the findings of fact made in the state administrative proceedings must "be considered *prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it." *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991). If the findings are not "regularly made," however, they are not entitled to deference. *Id.*; *see also County Sch. Bd. v. Z.P.*, 399 F.3d 298, 305 (4th Cir. 2005) ("[F]actual findings made during the state administrative proceeding are entitled to a presumption of correctness, so long as the findings were 'regularly made.'").

The district court in this case believed that the hearing officer's decision did not sufficiently explain how the hearing officer assessed the credibility of the witnesses and did not provide a sufficiently detailed analysis of the hearing officer's resolution of the legal and factual issues in the case. The district court concluded that these deficiencies in the hearing officer's opinion prevented the court from determining that the factual findings were regularly made, and the district court therefore gave no weight to the hearing officer's findings.

On appeal, the School Board contends that the district court erred by giving the hearing officer's opinion no weight. The School Board argues that the deficiencies identified by the district court do not support the conclusion that the hearing officer's findings were not regularly made. "Whether a district court has accorded the proper due weight to the administrative proceedings is a question of law—or at least a mixed question of law and fact—to be reviewed de novo by an appellate court." *MM*, 303 F.3d at 531 (internal quotation marks omitted).

(1)

When determining whether a hearing officer's findings were regularly made, our cases have typically focused on the *process* through which the findings were made: "Factual findings are not regularly made if they are reached through a process that is far from the accepted norm of a fact-finding process." *Z.P.*, 399 F.3d at 305 (internal quotation marks omitted); *see also Doyle*, 953 F.2d at 105 ("[I]n

deciding what is the due weight to be given an administrative decision under *Rowley*, we think a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed."). In this case, there is nothing in the record suggesting that the hearing officer's process in resolving the case was anything other than ordinary. That is, the hearing officer conducted a proper hearing, allowing the parents and the School Board to present evidence and make arguments, and the hearing officer by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case. Indeed, none of the deficiencies in the hearing officer's opinion identified by the district court have anything to do with the process through which the hearing officer made the required factual findings; as we will explain, the district court's criticisms instead focus on the manner in which the hearing officer expressed his view of the case.

Although our IDEA cases have generally focused on the process of fact-finding when determining whether a hearing officer's factual findings were regularly made and thus entitled to deference, we assume that, in a proper case, the manner in which a hearing officer's factual findings are presented could be so deficient as to deprive the opinion of the deference to which it would otherwise be entitled under *Rowley* and *Doyle*. *Cf. Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 663 n.* (4th Cir. 1998) (concluding that *Doyle* did not require that deference be given to the opinion of the first-level state hearing officer over that of the state officer reviewing that opinion in part because the decision of the first-level state hearing officer was "both cursory and conclusory" and thus was properly rejected by the reviewing officer). The question, then, is whether the hearing officer's opinion in this case was so deficient as to warrant the district court's rejection of the hearing officer's factual findings.

(2)

In his written opinion, the hearing officer stated that he "found all the witnesses credible, and all the experts qualified to testify within their fields." J.A. 141. The hearing officer also specifically found J.P.'s mother to be a very knowledgeable and credible witness, but the

opinion otherwise contains no specifics about the hearing officer's view of the credibility of the witnesses.

The district court found the hearing officer's opinion to be "virtually useless in assessing the credibility of the witnesses." J.A. 1828. The district court explained that

> Under *Doyle*, a hearing officer's credibility determinations are to be given due weight where they are normally made. However, because the State Hearing Officer here made no credibility determinations except with respect to [the mother], obviously no weight can be given to the State Hearing Officer's absent credibility determination. . . .
>
> Where, as here, the testimony of the witnesses, factual and expert, are at odds over important points, often significantly so, a finding that all witnesses are credible means that disparate, sometimes dramatically opposed, recitations of fact are accepted as true. That is neither possible nor helpful, and it certainly makes it impossible to give any weight to the State Hearing Officer's factual findings.

J.A. 1829. On appeal, the School Board contends that the hearing officer's explanation of his credibility assessments was sufficient and that the district court therefore erred by using the hearing officer's approach to the credibility issue as a basis for rejecting the hearing officer's findings. We agree.

Preliminarily, we confess some puzzlement over the district court's view of the credibility question. We find nothing improper or unusual in the hearing officer's statement that he found all witnesses credible. As we understand it, the statement simply means that the hearing officer determined that all of the witnesses believed what they told the hearing officer. That is, the statement reflects the hearing officer's view that, for example, the School Board's witnesses believed J.P. made progress under the 2004 IEP and thus were not lying when they testified to that effect, and the parents' witnesses similarly believed J.P regressed under the 2004 IEP and thus were not lying when they testified to that effect. The hearing officer's belief that all of the witnesses were testifying about the facts as the witnesses perceived them

to be does not mean, as the district court concluded, that the hearing officer must have accepted as true "disparate, sometimes dramatically opposed, recitations of fact." J.A. 1829. It means only that the hearing officer could not dispose of the case by branding the witnesses of one side or the other as dissemblers unworthy of belief, and that the hearing officer was therefore required to decide whether he found the School Board's evidence or the parents' evidence to be more persuasive.

While the hearing officer did not explicitly state that he found the School Board's witnesses more persuasive, our case law does not require an IDEA hearing officer to offer a detailed explanation of his credibility assessments. *See Z.P.*, 399 F.3d at 306 ("*Doyle* . . . requires the *district court* to explain its reasons for rejecting the findings of the hearing officer; it does not require the *hearing officer* to explain in detail its reasons for accepting the testimony of one witness over that of another."). Moreover, because the hearing officer ultimately determined that J.P. made more than minimal progress under the 2004 IEP and that the 2005 IEP was adequate (views that were advocated by the School Board's witnesses and disagreed with by the parents' witnesses), it is apparent that the hearing officer in fact found the School Board's evidence more persuasive. Such implicit credibility assessments "are as entitled to deference under *Doyle* as explicit findings." *Id.* at 307. Accordingly, the district court erred by relying on the absence of explicit credibility findings to conclude that the hearing officer's findings were not regularly made and thus were not entitled to deference under *Doyle*.

(3)

The district court also concluded that deference to the hearing officer's findings was not required because the hearing officer's opinion was insufficiently detailed. For example, the district court criticized the hearing officer's "terse, conclusory" summaries of testimony, J.A. 1828, and the court stated that the hearing officer's "failure to recite, much less differentiate and evaluate, the opinions of experts makes it impossible to identify the hearing officer's views on the expert evidence." J.A. 1829. According to the district court, "the complete lack of written analysis in the State Hearing Officer's opinion" prevented

the court from determining whether the hearing officer's findings of fact were regularly made. J.A. 1831.

The School Board argues on appeal that the hearing officer's opinion was sufficiently detailed to permit the district court to understand the basis for the hearing officer's resolution of the parents' claims. The School Board contends that the level of detail and explanation demanded by the district court far exceeds that required by the IDEA and this court's case law and is unreasonable given the role of a state hearing officer and the nature of IDEA administrative proceedings. We agree.

As the School Board observes, the hearing officer's opinion complied with all statutory requirements. The opinion clearly satisfied the federal requirement that the administrative fact-finding and decision be in writing unless the parents request the decision in electronic form. *See* 20 U.S.C.A. § 1415(h)(4); 34 C.F.R. § 300.512(a)(5) (2007). The hearing officer's opinion likewise satisfied Virginia's requirement that the opinion include written determinations of whether the parents received proper notice, whether the child has a disability, whether the child needs special education and related services, and whether the school is providing a free and appropriate education. *See* 8 Va. Admin. Code § 20-80-76(J)(17). And while we have on occasion remanded IDEA cases to the hearing officer when the opinion failed to address a critical issue, *see, e.g.*, *JH v. Henrico County Sch. Bd.*, 326 F.3d 560, 568-69 (4th Cir. 2003), our case law has never suggested that any particular level of detail is required in the hearing officer's decision. If anything, our case law suggests that the level of detail required of a hearing officer is relatively low. *Cf. Z.P.*, 399 F.3d at 306 (explaining that *Doyle* "does not require the *hearing officer* to explain in detail its reasons for accepting the testimony of one witness over that of another").

In this case, we simply cannot conclude that the hearing officer's opinion was insufficiently detailed. The 25-page opinion included summaries of the witnesses' testimony, an outline of the relevant legal standards, and the hearing officer's findings of fact and legal conclusions. Although the district court stated that the hearing officer failed to even recite the opinions of the expert witnesses, the opinion in fact summarized the expert testimony, just as it did the lay testi-

mony. While the summaries were relatively short (typically a page or two), the summaries by and large captured the essence of the witnesses' testimony on the central issues of the case. Under these circumstances, the district court's description of the opinion as completely lacking in written analysis is difficult to understand.

We recognize, however, that the hearing officer's opinion could have been more thorough. As the district court noted, only two of the factual findings made by the hearing officer addressed issues about which the parties disagreed, and those findings are about as bareboned as they could be. *See* J.A. 147 ("During the 2004-2005 school year, [J.P] made progress in speech and language, behavior, and academics. . . . This progress was not minimal or trivial."). And while it is apparent that the hearing officer was persuaded by the School Board's evidence and its assertion that J.P. was making progress under the 2004 IEP, the opinion offers no explanation of which evidence the hearing officer found to be most important or why the hearing officer was persuaded by the School Board's evidence. As we noted above, however, neither the governing statutes, regulations, or case law requires the hearing officer to provide the detailed analysis demanded by the district court. While it would of course be preferable for hearing officers to explain their analysis in as much detail as possible, a hearing officer's failure to meet this aspirational standard does not provide a basis for concluding that the factual findings contained in a statutorily compliant written opinion were not regularly made and therefore not entitled to deference.[3]

---

[3]Assuming that a hearing officer's opinion could be so short on details that it could not be effectively reviewed by the district court, the district court would not be entitled to simply reject the hearing officer's findings out-of-hand. Given the statutory requirement that the district court "receive the records of the administrative proceedings," 20 U.S.C.A. § 1415(i)(2)(C)(i), and the *Rowley* Court's requirement that the district court give due weight to the findings made by the hearing officer, we believe the proper course of action would be for the district court to remand the matter to give the hearing officer an opportunity to flesh out his opinion. *See, e.g.*, *JH v. Henrico County Sch. Bd.*, 326 F.3d 560, 568-69 (4th Cir. 2003) (remanding to hearing officer because hearing officer did not make findings on critical issue).

It must be remembered that in Virginia, the IDEA hearing officers are lawyers appointed through the Supreme Court of Virginia to serve as judges in IDEA due process hearings. *See generally* Hearing Officer Sys. Rules of Administration, http://www.courts.state.va.us/publications/hearing_officer.html (last visited Jan. 17, 2008); *see also* 8 Va. Admin. Code § 20-80-76(D). The hearing officers operate under tight time constraints—in non-expedited cases, a written opinion must be issued within 45 days after a request for a due process hearing is received. *See* 8 Va. Admin. Code § 20-80-76(L)(1). As pointed out by an *amicus* in this case, this short time-frame means that the written opinions may be issued before a transcript has been prepared. Under these circumstances, hearing officers (who have no state-provided law clerks or clerical support) cannot be expected to craft opinions with the level of detail and analysis we expect from a district judge. By rejecting the hearing officer's opinion in this case for lack of detail, the district court improperly held the hearing officer to a standard not dictated by statute or case law and one which ignored the constraints under which an IDEA hearing officer operates.

## C.

For the reasons discussed above, we conclude that none of the deficiencies in the hearing officer's opinion identified by the district court are sufficient to support the district court's determination that the hearing officer's factual findings were entitled to no deference because they were not regularly made. Accordingly, we hereby vacate the district court's judgment and remand for reconsideration of the question of the adequacy of the 2005 IEP. *See Z.P.*, 399 F.3d at 310-11 (remanding for reconsideration by district court under the proper legal standard because the district court improperly rejected findings of hearing officer as "not regularly made" and thus gave them no weight). On remand, the district court shall reconsider whether the 2005 IEP was adequate to fulfill the School Board's obligation to provide J.P. with a free appropriate public education, giving deference to the hearing officer's decision. If after according deference to the hearing officer's decision the district court again concludes that the 2005 IEP was inappropriate and did not provide J.P. with a free appropriate public education, the district court must explain its decision. *See Doyle*, 953 F.2d at 105 ("[W]hen fact-findings are regularly made and

entitled to *prima facie* correctness, the district court, if it is not going to follow them, is required to explain why it does not.").[4]

## II.    Appeal No. 07-1320

The IDEA authorizes a district court to award attorney's fees to parents who prevail on their IDEA claims. *See* 20 U.S.C.A. § 1415(i)(3)(B)(i)(I). Because we have vacated the district court's order (appeal no. 06-2068) granting relief to the parents on their IDEA claims, the parents cannot at this juncture be considered the prevailing parties. Accordingly, we hereby vacate and remand the district court's order (appeal no. 07-1320) awarding attorney's fees to the parents. If the parents prevail on the merits of their IDEA claims after remand, the court may again consider the parents' entitlement to an award of attorney's fees. We express no opinion on the merits of the School Board's current challenges to the fee award, and we likewise express no opinion as to whether or in what amount fees should be awarded to the parents if they prevail after remand.

*VACATED AND REMANDED*

---

[4]Given our conclusion that a remand is required, we need not consider the School Board's other challenges to the district court's decision.