**For the District of Alaska**
**ANCHORAGE SCHOOL**
**DISTRICT, Plaintiff,**

v.

**D.S. and C.S., parents of D.S., a student with a disability.**

**Case No. 3:08–cv–0142–RRB.**

United States District Court,
D. Alaska.

July 24, 2009.

Bradley D. Owens, Eugenia G. Sleeper, Jermain Dunnagan & Owens, Anchorage, AK, for Plaintiff.

Sonja D. Kerr, Public Interest Law Center of Philadelphia, Philadelphia, PA, for Defendant.

### ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

RALPH R. BEISTLINE, District Judge.

## I. MOTION PRESENTED

This matter is an administrative appeal under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 ("IDEA"). Plaintiff is the Anchorage School District (ASD). Defendants are the parents of D.S., a child with autism and cerebral palsy.

Pending before this court is a Motion for Summary Judgment filed by ASD at Docket 21. This matter has been fully briefed by the parties. Oral argument has not been requested and would not be helpful to the Court. Accordingly, the Court enters the following Order.

## II. BACKGROUND

Under the IDEA, the unique educational needs of a child with a disability must be determined on an individual basis and an

individual program of education ("IEP") is developed for each child based on those unique needs. 20 U.S.C. § 1400(d)(1)(A). Under the IDEA, every child is entitled to a Free Appropriate Public Education ("FAPE"). There is no dispute between the parties that D.S. was eligible for services under the IDEA.

At the administrative level, the hearing officer, in a 64 page Decision and Order ("D & O"), concluded that a two year statute of limitations was appropriately applied under the circumstances of this case, finding that claims arising prior to January 11, 2005, were time-barred. The hearing officer found that ASD's April 2004, April 2005, and January 2006 IEPs were not reasonably calculated to confer on D.S. a meaningful educational benefit, and therefore denied him FAPE. She found that the home-based educational program utilizing intensive behavioral therapy ("IBT") and supervised by Autism Partnership was an appropriate educational program for D.S. and that the equitable considerations favored parents in the analysis of the appropriate remedy. D & O at 60–61. The hearing officer ordered the District to reimburse parents their reasonable costs for obtaining a comprehensive evaluation of D.S. and for the establishment and maintenance of the home-based program supervised by Autism Partnership. D & O at 61. She further identified precisely what the District must do in order to provide FAPE and made the adequacy of any program the District established subject to the approval of Autism Partnership. D & O at 61–63. She concluded that "Until such time as the Dis-

trict's proposed program of services for this Student is approved for implementation by Autism Partnership, Student's current private program of IBT supervised by Autism Partnership shall continue, with Student's private tuition and related educational program expenses reimbursed by the District." D & O at 63.

## III. STANDARD OF REVIEW

■■■■ Under the IDEA, federal courts are to receive the records of the administrative proceedings and base their decisions on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C). This means that "due weight" must be given to the administrative decision below and that courts must not "substitute their own notions of sound educational policy for those of the school authorities which they review."[1] A district court must carefully consider the administrative findings and, when reversing them, must fully explain its rationale for doing so.[2] "The amount of deference accorded the hearing officer's findings increases where they are thorough and careful."[3] Furthermore, credibility determinations made by an IDEA hearing officer are considered *prima facie* correct.[4]

## IV. DISCUSSION

ASD's Motion for Summary Judgment requests that the Court enter judgment in its favor, reversing and vacating the June 3, 2008, Hearing Officer decision insofar as that decision: 1) failed to apply the appropriate statute of limitations; 2) concluded the District violated procedural safeguards

**1.** *Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811, 817 (9th Cir.2007), citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

**2.** *Id.*

**3.** *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir.1995).

**4.** *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 888 (9th Cir.2001), quoting *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir.1991).

of the IDEA which deprived FAPE to D.S.; 3) concluded the IEPs for D.S. were not reasonably calculated to provide educational benefit (and thus denied FAPE); 4) ordered reimbursement for claimed expenses and tuition costs; and 5) selects and orders Autism Partnership as D.S.'s education program and educational decision maker. Docket 21.

## A. Statute of Limitations

■ ASD argues that the hearing officer erroneously disregarded applicable limitations periods. Docket 22 at 8–11. Specifically, ASD complains that Alaska's shorter statutory limitations period of 12 months was not enforced.[5] ASD admits, however, that on at least one occasion, the District utilized an incorrect notice, which stated that the appropriate limitations period was 2 years. Docket 22 at 10; AR 0010. Parents were never formally informed of the 12–month limitations period. Given the unique facts of this case, the hearing officer reached an equitable conclusion that the Federal two-year statute of limitations, rather than Alaska's 12–month statute of limitations, was the proper limitations period. This Court finds no error.

## B. Violations of Procedural Safeguards and Prior IEPs

■ The hearing officer found that IEP team meetings were not properly attended, adequate testing was not performed by the District, goals and objectives were not sufficiently measurable, and recommendations of "qualified experts" were ignored. The hearing officer therefore concluded that the IEPs could not be reasonably calculated to provide a meaningful educational benefit to D.S., and therefore concluded that the 2004, 2005, and 2006 IEPs denied FAPE. D & O at 53–57.

ASD argues that the IEPs complied with the procedural requirements of IDEA, and even if they did not, no procedural violation resulted in denial of FAPE. Docket 22 at 11–27. Specifically, ASD argues that the IEP meetings were properly attended and that the parent and professionals attending the 2004, 2005, and 2006 IEP meetings had the requisite background, experience, and training to assess D.S.'s condition and formulate a program to meet his needs under federal and state statutes. Docket 22 at 18. The briefing lists exactly who was present at each of the 20 meetings over the course of two years. ASD argues that these teams "had the requisite experience and knowledge of D.S. to design his educational program." Docket 22 at 19. ASD argues that the hearing officer overlooked extensive data reviewed by the teams when she concluded that the IEPs were developed without necessary evaluation data and without assessments to determine educational needs of autistic students. *Id.* ASD argues the goals and objectives developed for D.S. were measurable, appropriate, and uniquely tailored to his educational needs and that the IEPs were reasonably calculated to, and did, provide educational benefit to D.S. Docket 22 at 21–24. "Progress reports reflect that of the 34 2005 IEP goals introduced, D.S. met three of them and was progressing on 30." Docket 22 at 30.

In response, the parents argue that the evidence supports the hearing officer's finding that no one qualified in assessing autism was present at the 2004 IEP meeting, nor was there a regular education teacher in attendance, despite the fact that D.S. was headed into Kindergarten. Re-

---

5. AS 14.30.193(a) provides that a parent must "make a request for a due process hearing not later than 12 months after the date that the school district provides the parent with written notice of the decision with which the parent disagrees."

garding the April 2005 IEP, the parents note that it failed to address parental training, the IEE, and behavioral planning, all of which were parent concerns. Thirteen of the meetings that ASD mentions were collaboration meetings, not IEP meetings. The IEP was established and the subsequent meetings were intended to coordinate implementation of the IEP, which the parents thought was to include ABA based on the June and September 2005 Prior Written Notices. Regarding the 2006 IEP, the parents note that of the three individuals that ASD now claims were present and able to interpret Dr. Holding's evaluation, two were deemed "not credible" by the hearing officer based on their testimony. The third did not testify, but parents note that she was assigned to do the "Brigance" evaluation but never completed the assignment. Docket 25 at 27.

The parents note that the hearing officer concluded that ASD violated at least four duties to D.S.: 1) duty to identify; 2) duty to request a hearing about IEE; 3) duty to have a present level of performance that was objective and measurable; and 4) duty to have parents at IEP meeting. Docket 25 at 27. Such procedural violations, they argue, can deny FAPE.

■ "[A] state must comply both procedurally and substantively with the IDEA."[6] In determining whether FAPE was denied, the court must engage in a two-step inquiry, looking first at the procedure, and second at the substance, to determine whether the IEP was "reasonably calculated to enable the child to receive educational benefits."[7] However, the court need not reach the question of substantive compliance if the court finds "procedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, or that caused a deprivation of educational benefits."[8]

Here, the parents argue that accurate and timely evaluation of a student with autism is essential to providing a child with autism a free appropriate public education and failure to so evaluate denies FAPE. Time is of the essence for children with autism and ASD's failure to complete autism screening as requested by the parents in 2003 was a significant failure on ASD's part.

The Court notes that the hearing officer rejected multiple arguments made by the parents that the violation of various procedural safeguards constituted a denial of FAPE. D & O at 43–47. Nevertheless, she ultimately concluded that the 2004, 2005, and 2006 IEPs *all* failed to provide D.S. with a meaningful educational benefit and thus denied FAPE. D & O at 53–57. She found that the District failed to do any of the testing that it intended and received parents' consent to perform. Despite D.S.'s new diagnosis of autism in 2004, the only category of disability addressed was cerebral palsy. She found that no regular education teacher was present at the 2004 IEP meeting, and neither the school principal, a Teacher Consultant, or an Administrative Facilitator attended, "thus no District Representative qualified to provide or supervise the provision of specially designed instruction to meet the unique needs of this disabled child … was present." D & O at 53. The hearing officer went on to find that the April 2005 IEP failed for many of the same reasons. Testing was abandoned and a functional behav-

6. *N.B. v. Hellgate Elementary School District,* 541 F.3d 1202, 1207 (9th Cir.2008) (citation omitted).

7. *Id.*

8. *Id.* (citation omitted).

ior assessment was promised, then forgotten. No testing instruments to determine the educational needs of autistic students were administered. The 2005 IEP meeting took place on a date which the parents were unavailable, and the District declined to change the date. Further, the 2005 IEP lacked a plan for dealing with D.S.'s persistent behaviors that interfered with his learning. Similarly, the hearing officer found the January 2006 IEP suffered many of the same procedural and substantive flaws as the two previous IEPs. D & O at 55. Specifically, it failed to assess D.S.'s needs and contained vague Goals and Objectives without baselines or methods to objectively measure progress. D & O at 56–57.

■ "The amount of deference accorded the hearing officer's findings increases where they are thorough and careful." [9] The hearing officer's findings were extremely thorough and careful in this case. ASD argues that the hearing officer's "remarkably selective, and often incorrect, factual findings are entitled to little deference," but the parents argue that ASD's claim that the hearing officer incorrectly decided certain factual issues is really an attack on the hearing officer's determination that two of the school witnesses simply were not credible. Credibility determinations made by an IDEA hearing officer are considered prima facie correct.[10] "[T]here is nothing in the record suggesting that the hearing officer's process in resolving the case was anything other than ordinary. That is, the hearing officer conducted a proper hearing, allowing the parents and the School Board to present evidence and make ar-

guments, and the hearing officer by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case." [11] The Court finds no reversible error.

## C. Reimbursement for expenses and tuition

■ Parents who unilaterally place their child in a private program are entitled to reimbursement only if a hearing officer or court concludes both that the placement offered by the district violates IDEA *and* that the private placement is appropriate.[12] Thus, while hearing officers are generally authorized to order private services or reimbursement for providers that don't meet state educational standards, they may do so only if parents have demonstrated that the private placement is otherwise appropriate. Under this standard, ASD argues that the hearing officer erred in ordering reimbursement and selecting Autism Partnership as D.S.'s educational program because it lacks qualified direct service providers, and is not the least restrictive environment.

### 1. Qualified Service Providers

ASD argues that direct services under the AP program are provided in D.S.'s home by college student "home staff," and there is no evidence that any of these students have any training in education or are licensed teachers. TR 973, 1048–49. ASD argues that such a home program, which lacks qualified special education pro-

---

**9.** *Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 891 (9th Cir.1995).

**10.** *Amanda J. v. Clark County Sch. Dist.,* 267 F.3d 877, 888 (9th Cir.2001), quoting *Doyle v. Arlington County Sch. Bd.,* 953 F.2d 100, 105 (4th Cir.1991).

**11.** *J.P. v. Peterson v. County Sch. Bd. of Hanover, VA,* 516 F.3d 254, 259–60 (4th Cir.2008).

**12.** *Florence County School District v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

viders delivering direct services, it is not "otherwise appropriate" under IDEA.

The Ninth Circuit has recognized that a parent's unilateral placement need not comply with the usual state special education standards.[13] A parent's unilateral placement need not have certified special education teachers or even an IEP for the disabled student in order to qualify as appropriate.[14] Here, Autism Partnership provides services using the ABA method that the District had previously agreed, and then failed, to provide. The parents utilize private psychologists to independently determine and track D. S.'s progress with standardized measures. Docket 25 at 36. The Court finds that the Autism Partnership service providers are adequately qualified.

### 2. Least Restrictive Environment

ASD claims that the Autism Partnership home based program is not providing D.S. a program in the "least restrictive environment."

> [T]o the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of the child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.[15]

ASD contends that the student's home program is by nature more restrictive than a placement at the public school. Howev-

er, where a home-based program is necessary for a student to receive meaningful benefit from his education, it is appropriate. "Disabled children, to the maximum extent appropriate, should be educated with children who are not disabled, i.e., they should be mainstreamed.... The education of a disabled child should take place in the least restrictive environment. ... However, residential placement is appropriate for a disabled child if necessary for her to receive benefit from her education."[16] In this case, ASD essentially accepted and agreed to provide ABA trained staff as of June 2005 and didn't do so. The documents show the school had agreed to provide D.S. ABA trained staff in June 2005, and reiterated this plan in writing in September 2005. T123, T133. Yet by January 2006, D.S. had met only three of the 33 goals on his IEP. Ex. U2–1–3. As of the time of the parents' decision to take D.S. out, he was nearly seven and ½ years old, not toilet trained, had severely disruptive behaviors, was struggling with academics, and had stalled in his language. Given D.S.'s needs, the Court finds that the home based program is the least restrictive appropriate program for D.S.

### D. Assignment of Autism Partnership as Decision Maker

■ Finally, ASD complains that the hearing officer exceeded her authority by expunging the IEP team and replacing it with Autism Partnership. The hearing officer concluded as follows:

> Any school based program of intensive behavior services will be devised with the assistance of and supervised by Au-

**13.** *Union School District v. Smith,* 15 F.3d 1519, 1526 (9th Cir.1994).

**14.** *Florence County,* 510 U.S. at 14, 114 S.Ct. 361 (noting that "it hardly seems consistent with the Act's goals to forbid parents from educating their child at a school that provides an appropriate education simply because that

school lacks the stamp of approval of the same public school system that failed to meet the child's needs in the first place.").

**15.** 20 U.S.C. § 1412(a)(5)(A)

**16.** *Seattle Sch. Dist. v. B.S.,* 82 F.3d 1493, 1500 (9th Cir.1996).

tism Partnership to ensure its efficacy. Until such time as the District's proposed program of services for this Student is approved for implementation by Autism Partnership, Student's current private program of IBT supervised by Autism Partnership shall continue, with Student's private tuition and related educational program expenses reimbursed by the District.

D & O at 63. The hearing officer concluded that she was "confident that ... the professionals at Autism Partnership will recommend Student's return to the school environment at the earliest possible time that will ensure Student receives a free appropriate public education at school." *Id.*

ASD argues that supplanting professionals selected by districts and replacing them, in this case, with a company based in California, is simply not a power in the hearing officer's repertoire. In this case, the hearing officer has not only added to IEP team requirements, but has effectively eliminated the IEP team and replaced it with a California company, which is now charged with developing D.S.'s IEP until such time as the District implements an ABA/IBT program that is acceptable to Autism Partnership. The District submits that the hearing officer's authority to remedy an IDEA violation does not include the authority to replace the statutorily mandated IEP team with Autism Partnership.

The Court agrees.

The parents argue that the hearing officer had the authority to order Autism Partnership to supervise the formulation of the new IEP, noting that the IDEA expressly gives hearing officers and courts broad authority to order appropriate remedies, without regard to whether the family specifically mentions each and every possible remedy that might be deemed appropriate by a hearing officer. Once a Court holds that the public placement vio-

lated IDEA, it is authorized to grant such relief as the court determines is appropriate. However, the potential conflict of interest that has been created by this arrangement is evident. Autism Partnership has a financial interest in prolonging D.S.'s home-based program. More importantly, it is the ASD that is responsible for orchestrating the student's educational needs and developing an IEP that will address D.S.'s unique circumstances. The Court is confident that it can do so. The IEP team shall therefore continue responsibility for overseeing D.S.'s educational needs, and will not be subject to Autism Partnership's approval.

## V. CONCLUSION

Anchorage School District's Motion for Summary Judgment at **Docket 21** is **GRANTED IN PART** and **DENIED IN PART.** The decision of the hearing officer is **AFFIRMED** in all respects except the appointment of Autism Partnership as the overseer of D.S.'s IEP. This portion of the hearing officer's decision is **REVERSED.** The IEP team shall continue responsibility for overseeing D.S.'s educational needs.

**IT IS SO ORDERED.**

## PROCEEDINGS: **MINUTE ORDER FROM CHAMBERS RE ATTORNEY FEES**

■ The Court has reviewed the Motion for Attorney Fees at Docket 39, as well as the Opposition and Reply thereto. The Court determines that $250 per hour for Ms. Kerr's 27.4 hours of legal work as reflected in Docket 39, Exhibit A, is adequate, reasonable, and appropriate in this instance. The Court declines to award fees at the enhanced rate of $450 per hour, or to award fees for the 12.5 hours incurred by a law student under the supervision of Ms. Kerr. These additional fees are not justified under the circumstances. Ac-

cordingly, Defendants are awarded $6,850.00 in attorney fees and $18.86 in costs for a total award of $6,868.86.

**IT IS SO ORDERED.**