UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1486

SE.H., individually and by and through his parents and next
friends, J.H. and S.H.; J.H.; S.H.,

Plaintiffs - Appellants,

v.

BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY PUBLIC SCHOOLS;
MAMIE PERKINS, Interim Superintendent; MARY TILLAR, Director
of Special Education; PATRICIA DEWITT, Coordinator of
Special Services; WENDY CHERMAK, Section 504 Resource Pupil
Personnel Worker,

Defendants - Appellees.

------------------------

COUNCIL OF PARENT ATTORNEYS AND ADVOCATES,

Amicus Supporting Appellants.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   J. Frederick Motz, Senior District
Judge.  (1:14-cv-00558-JFM)

Argued:  March 21, 2016                 Decided:  May 2, 2016

Before AGEE and THACKER, Circuit Judges, and Henry E. HUDSON,
United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed in part and remanded by unpublished per curiam opinion.

———————————

**ARGUED:** Selene Almazan-Altobelli, SELENE ALMAZAN LAW, LLC, Silver Spring, Maryland, for Appellants. Manisha Sharad Kavadi, CARNEY, KELEHAN, BRESLER, BENNETT & SCHERR, LLP, Columbia, Maryland, for Appellees. **ON BRIEF:** Mark B. Martin, LAW OFFICES OF MARK B. MARTIN, P.A., Baltimore, Maryland, for Amicus Curiae.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Se.H., individually and by and through his parents and next friends S.H. and J.H. (collectively, "Appellants"),[1] appeals the district court's grant of summary judgment in favor of the Board of Education of Anne Arundel County Public Schools and four employees of the public school system (collectively, "AACPS" or "Appellees").

An Administrative Law Judge ("ALJ") ruled the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), does not entitle Se.H., who was a first grader during the 2013-14 school year, to an individual trained in Cardiopulmonary Resuscitation ("CPR") and the Heimlich maneuver to accompany him throughout the school day. The district court upheld this decision. Appellants contend the district court erroneously deferred to the ALJ's IDEA decision, and also failed to address their claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Section 504"), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA").

We hold that the district court properly granted summary judgment in favor of Appellees on Appellants' IDEA

---

[1] To protect the identity of the child, this opinion refers to him and to his parents by their initials only. See MM ex rel. DM v. Sch. Dist. of Greenville Cty., 303 F.3d 523, 526 (4th Cir. 2002).

claims. However, the district court's reasons for disposing of the Section 504 and ADA claims are unclear. Therefore, we remand to allow the district court to clarify the reasoning underlying its disposition of these claims.

I.

A.

The ALJ for the Maryland Office of Administrative Hearings ("OAH") found the following facts, which are undisputed on appeal. Se.H. has been diagnosed with several medical conditions, including cerebral palsy; severe food allergies to wheat/gluten, barley, peanuts, and buckwheat; allergies to dust, pollen, mold, and smoke; asthma, including Baker's Asthma (an allergic disease caused mainly by inhalation of flour); oral dysphasia (a swallowing disorder) and feeding difficulties; dysarthria (a weakening of speech-producing muscles); seizure disorder; postural kyphosis (an abnormal curve of the spine); and vision problems. At all relevant times, Se.H. was enrolled in Rippling Woods Elementary School ("Rippling Woods"), which is part of the AACPS System.

At Rippling Woods, Se.H. is assigned to a one-on-one aide (the "Aide"). He has an extensive Individualized Education Program ("IEP") that provides for "instructional supports, physical and environmental supports, adult assistance or monitoring at all times, assistive technology, speech-language

4

pathology services, physical therapy services, occupational therapy services, and vision services." J.A. 58.[2] Rippling Woods has implemented the IEP by carrying out the following measures, inter alia:

- To decrease the possibility of exposure to food allergens, at lunch time, Se.H. sits at the end of a table with other classmates, and his lunch area is marked off by a yellow stripe about two and one-half feet from the end of the table. The other pupils are not allowed to cross into Se.H.'s lunch area;

- To avoid exposing Se.H. to potential allergens, students in his class eat breakfast in the cafeteria rather than the classroom;

- The Aide assists Se.H. during lunch, and the speech-language pathologist developed a feeding protocol for use at mealtimes, with the goal that Se.H. will self-feed at a modified independent level;

- If anaphylaxis occurs, the first line of defense is an injection with an epinephrine auto-injector ("Epi-Pen"), which is kept in a pack on the back of Se.H.'s wheelchair, and all Rippling Woods staff members have been trained to use the Epi-Pen;

- If Se.H. were to choke on food or a foreign object, the emergency plan is to call 911 and have trained staff perform the Heimlich maneuver;

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

- If Se.H. goes into respiratory arrest and becomes unconscious, the emergency plan is to call 911 and have trained staff administer CPR;

- Rippling Woods has a four-page form that guides personnel through Se.H.'s abilities and needs while on field trips. It requires that Se.H. have adult supervision and assistance on such trips, but it does not require that the accompanying adult be trained in CPR and the Heimlich maneuver;

- Se.H. has a walkie-talkie attached to the back of his wheelchair that can communicate with other walkie-talkies located in the nursing office, principal's office, and with the general and special education teachers;

- Rippling Woods has staff trained in both CPR and the Heimlich maneuver, including the school nurse (who is at the school half-time), the Licensed Practical Nurse health assistant (who is at the school full-time), the physical education teacher, and the school-based speech pathologist. Three cafeteria workers also have training in the Heimlich maneuver. Nursing staff can reach the cafeteria in four seconds and Se.H.'s classroom in 18 seconds.

Se.H.'s parents are dissatisfied with the IEP, however, because it does not require that an individual trained in Heimlich and CPR is by Se.H.'s side at all times throughout the day.[3]

---

[3] Se.H. attended kindergarten at Rippling Woods during the 2012-13 school year, and during that year, as well as 2013-14, he had no episodes of choking or anaphylaxis, did not require administration of the Heimlich maneuver or CPR, and had no episodes requiring a 911 call. Se.H. had not attended any field trips at the time of the ALJ's hearing.

To prepare for the 2013-14 school year, Se.H.'s IEP team held a meeting on March 4, 2013. It was at this meeting that his parents first expressed concern that a staff member trained in CPR and the Heimlich maneuver was not with Se.H. at all times. The team then held nine meetings between April 17 and August 28, 2013, and his parents "continued to bring this issue up for discussion." J.A. 62. AACPS rejected this request at every turn, explaining that they were only required to have trained personnel in the building, which they did. Even when the Anne Arundel County Health Department offered to train Se.H.'s Aide in CPR and Heimlich maneuver, Appellee Patricia DeWitt, AACPS Coordinator of Special Services, would not allow her to be trained because "[i]t would set a precedent and [the Aide] already ha[d] too much on her plate." Id. at 73-74. DeWitt explained at the ALJ hearing that training the Aide would "[not be] an appropriate use of staff." Id. at 74.

Se.H.'s IEP for the 2013-14 school year was finalized on August 28, 2013, but his parents were not satisfied. They filed a due process complaint (the "Administrative Complaint") with the OAH on September 10, 2013, claiming that AACPS failed to provide Se.H. with a free appropriate public education ("FAPE") as required by the IDEA.

7

B.

In the Administrative Complaint, Appellants sought relief not only under the IDEA, but also under Section 504 and the ADA. Appellants requested the following relief: "CPR and Heimlich maneuver training for adult staff, including but not limited to [Se.H.'s] adult assistant and any other adults who work directly with [Se.H.] and are present throughout the day when exposure to known allergens or potential aspiration and asphyxiation are possible," and also CPR and Heimlich maneuver training for those "who work directly with [Se.H.] and are available to attend field trips with [Se.H.]." J.A. 71.

On October 23, 2013, the ALJ determined that the Section 504 issues (and presumably, the ADA issues) raised in the Administrative Complaint should be dismissed for lack of jurisdiction. This determination was based on AACPS's October 15, 2013 letter to the OAH explaining that it no longer possessed the authority to hold Section 504 hearings. Therefore, the ALJ only considered whether AACPS "failed to provide [Se.H.] a [FAPE] in the least restrictive environment for the 2013-2014 school year" under the IDEA. J.A. 52.[4]

---

[4] The ALJ also addressed whether AACPS committed an IDEA procedural violation by failing to explain in writing why AACPS declined to train the Aide. See 20 U.S.C. § 1415(b)(3). The ALJ ultimately found no violation, and Appellants do not challenge this determination on appeal.

8

The ALJ held the IDEA administrative hearing on four separate days, stretching from late October to early December 2013. Appellants presented seven witnesses, and AACPS presented four witnesses, three of which were also called by Appellants. The parties filed over 50 exhibits.

The ALJ rendered a decision on the IDEA claim on December 18, 2013, ultimately determining that the procedures in place at Rippling Woods satisfied the IDEA standards. Meanwhile, the parties engaged in protracted communications in an attempt to meet for an administrative hearing pursuant to Section 504, to no avail.

Appellants filed the instant action in the District of Maryland on February 25, 2014. Counts I and II challenge the ALJ's IDEA decision, alleging substantive and procedural IDEA violations.[5] Counts III, IV, V, and IX allege Section 504 violations only: intentional discrimination (III), discrimination in AACPS's policies and practices (IV), denial of reasonable accommodation (V), and failure to provide a FAPE (IX). Counts VI and VII allege claims under both the ADA and Section 504: failure of AACPS to act against certain employees

---

[5] Pursuant to the IDEA, "[a] party aggrieved by the decision of the state agency may bring a civil action in state or federal court." E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ., 773 F.3d 509, 513 (4th Cir. 2014) (citing 20 U.S.C. § 1415(i)(2)).

9

for discriminatory actions (VI), and retaliation (VII).[6] And Count VIII alleges Appellees violated Title II of the ADA by excluding Se.H. from programs, services, and benefits by reason of his disabilities.

Apart from attorney's fees and costs, Appellants seek only the following equitable relief: an order requiring the Aide to be trained in Heimlich and CPR, and a declaratory judgment stating that AACPS's Section 504 practices violate Section 504 as applied to Se.H.[7]

Appellants filed a motion for partial summary judgment on only the IDEA claims and Section 504 discrimination claims. Appellees filed a cross motion for summary judgment on all counts. The district court granted Appellees' motion and denied Appellants' motion, explaining:

> It is true that because of Se.H.'s physical condition, there is a greater risk he will need CPR or the administration of the Heimlich maneuver than other students. However, [AACPS] has in place reasonable procedures to assure that if Se.H. does need assistance, there are persons available who

---

[6] Appellants also grounded these causes of action in 42 U.S.C. § 1983, but they do not raise any issues with respect to § 1983 in this appeal.

[7] Appellants also seek "a declaratory judgment" stating the ALJ's decision contained "mistakes of law that were flawed and were clearly erroneous." J.A. 26. Because the possibility of this type of relief is inherent in the review process set forth in the IDEA, we decline to consider it a separate remedy.

> will be able to help him. One certainly is sympathetic to Se.H. and his parents. However, reasonableness is something less than perfection, and, as found by the [ALJ], the measures that defendant has put in place provide adequate protection of Se.H.

J.A. 46-47. The district court mentioned Section 504 and the ADA[8] only in the opening sentence of the memorandum, and in a footnote observed, "[T]he emergency plan that defendant has in place for Se.H. complies with applicable law." J.A. 47 n.1 (emphasis supplied). Appellants filed a timely notice of appeal.

## II.

### The IDEA Decision

We first address whether the district court erred in granting summary judgment to Appellees on Appellants' IDEA claims.

### A.

The IDEA requires that states receiving federal education funds provide a FAPE to all children with disabilities. See E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ., 773 F.3d 509, 513 (4th Cir. 2014) (citing 20 U.S.C. § 1400(d)(1)(A)). Where an ALJ decides that a student's IEP provides a FAPE, the party challenging the IEP "properly

---

[8] The district court actually stated the action was brought under the "ADEA," but we construe this as a typo.

11

bears the burden of proof in showing that the [ALJ]'s decision was erroneous." Barnett by Barnett v. Fairfax Cty. Sch. Bd., 927 F.2d 146, 152 (4th Cir. 1991).

A reviewing court "is obliged to conduct a modified de novo review" of the ALJ's IDEA decision, "giving 'due weight' to the underlying administrative proceedings." MM ex rel. DM v. Sch. Dist. of Greenville Cty., 303 F.3d 523, 530-31 (4th Cir. 2002) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206 (1982)). In this situation, "findings of fact made in administrative proceedings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." Id. at 531; see also J.P. ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty., Va., 516 F.3d 254, 259 (4th Cir. 2008); Doyle v. Arlington Cty. Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991). Furthermore,

> [w]hether a district court has accorded the proper "due weight" to the administrative proceedings is a question of law -- or at least a mixed question of law and fact -- to be reviewed de novo by an appellate court. In our review, we need not defer to factual recitations made by a district court from the administrative record, because that court stands in no better position than do we in reviewing the record.

MM, 303 F.3d at 531.

12

If the administrative findings of fact are not "regularly made," however, they are not entitled to deference. J.P., 516 F.3d at 259; see also Cty. Sch. Bd. of Henrico Cty., Va. v. Z.P., 399 F.3d 298, 305 (4th Cir. 2005) ("[F]actual findings made during the state administrative proceeding are entitled to a presumption of correctness, so long as the findings were regularly made." (internal quotation marks omitted)). Factual findings are not "regularly made" "if they are reached through a process that is far from the accepted norm of a fact-finding process." J.P., 516 F.3d at 259 (internal quotation marks omitted); see also Doyle, 953 F.2d at 105 ("[I]n deciding what is the due weight to be given an administrative decision under Rowley, we think a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed.").

## B.

Appellants contend the ALJ's IDEA decision was not "regularly made" for the following reasons: (1) it was "not well-reasoned and nor [sic] supported by the record"; (2) it "failed to make determinations based upon findings of fact and current IDEA statutes and regulations" and instead characterized the issues as "policy" disputes; and (3) it erred in its

13

analysis regarding "training" of school personnel.  Appellants'

Br. 14-16.

We first note that although Appellants mention that the ALJ's "findings were not entitled to deference" and that the ALJ "failed to make [certain] determinations," their opening brief does not specifically note which findings they challenge or which "determinations" the ALJ failed to make.  Appellants' Br. 14.  Therefore, Appellants have waived this particular issue.  See Fed. R. App. P. 28(a)(8)(B) ("The appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."); see also Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 n.6 (4th Cir. 2016) ("Failure to present or argue assignments of error in opening appellate briefs constitutes a waiver of those issues[.]").

In any event, the ALJ's proceedings were not "far from the accepted norm."  J.P., 516 F.3d at 259 (internal quotation marks omitted).  First, the ALJ decision was well-reasoned and supported by the record.  The ALJ heard testimony from numerous witnesses over four days and clearly reviewed meeting reports, health reports, educational documents, and IEPs.  The ALJ credited the testimony of personnel who actually worked with Se.H. over Appellants' expert, which is reasonable and

14

appropriate. See A.B. ex rel. D.B. v. Lawson, 354 F.3d 315, 328 (4th Cir. 2004) ("IDEA requires great deference to the views of the school system rather than those of even the most well-meaning parent."). We see no indication that the ALJ deviated from the "normal" process of soliciting evidence and hearing testimony.

Second, Appellants' reliance on the ALJ's mention of "policy" disputes is a red herring. Appellants maintain that the ALJ relied on "policy" rather than "appl[ying] the requirements of the IDEA to the facts in their case." Appellants' Br. 17. In so arguing, Appellants extract isolated phrases out of context.

The ALJ did state, "The dispute in this case is really about policy, not facts." J.A. 71. However, the ALJ then expounded on this statement, explaining that according to the notes from the March 4, 2013 IEP meeting (when the parents raised their concerns for the first time), the parents had been in contact with the Maryland State Department of Education. Based on a conversation with personnel there, they believed that someone trained in the Heimlich maneuver and CPR was required to be in the room with Se.H. when he was eating. The ALJ found that, in that March IEP meeting, the parents were referring to Maryland's Technical Assistance Bulletin 28, which explained, "Training of personnel [for safety of students during mealtime]

15

<u>should</u> include first aid, CPR, Heimlich, signs and symptoms of aspiration, and procedures specific to individual students/children." <u>Id.</u> at 72 (emphasis supplied). Therefore, the ALJ's statement about "policy" was merely a recognition that the dispute between the parents and AACPS was based in part on interpretation of a state policy.

The ALJ then mentioned "policy" again, stating:

> A review of [the evidence] might lead one to think that AACPS could have easily complied with the Parents' request to forestall disagreement, and ultimately, litigation. However, as stated previously, <u>this dispute is about policy, not facts</u>. Whether AACPS could have provided the training that the Parents wanted is immaterial; the issue is whether the decision not to do so deprives the Student of a FAPE.

J.A. 74 (emphasis supplied). A reasonable reading of this passage is that an ALJ should not consider what an educational entity <u>could have</u> done; rather, it is required to look at whether that entity's actions were appropriate under the IDEA. The ALJ in this case did just that. He applied the information from extensive testimony and numerous exhibits to the proper IDEA standards in rendering his decision.

Finally, Appellants' argument regarding training is without merit. Appellants claim that the ALJ's statement that "'training that a school system decides to use . . . is solely within the purview of school officials'" was incorrect and

16

"subsequently over ruled [sic]" by the enactment of 20 U.S.C. § 1414(d)(1)(A). Appellants' Br. 16 (quoting J.A. 77); see also 20 U.S.C. § 1414(d)(1)(A)(i)(IV) (An IEP should include "a statement of the program modifications or supports for school personnel [i.e., special training] that will be provided for the child." (emphasis supplied)).

But even if § 1414(d)(1)(A) "overruled" the concept upon which the ALJ relied, nothing in these provisions undermines the ALJ's ultimate decision. The ALJ still analyzed whether AACPS's decision to forego training Se.H.'s Aide deprived him of a FAPE. See J.A. 77-78 ("The evidence that such trained personnel would be of benefit to the Student is minimal, and [AACPS]'s evidence is convincing that it is not necessary, since trained personnel are always in the building and immediately available if an emergency occurs."). As a result, any perceived error on the ALJ's part was not materially erroneous.

For these reasons, the district court was entitled to give the administrative decision "due weight." We reject Appellants' argument to the contrary.[9]

---

[9] Appellants fail to set forth a sufficient argument challenging the district court's or ALJ's determination that Se.H.'s IEP provides him with a FAPE. Therefore, they have also waived this issue on appeal. See Fed. R. App. Proc. 28(a)(8)(B); Estate of Armstrong, 810 F.3d at 898 n.6.

17

III.

Section 504 and ADA Claims

Appellants also contend the district court erred in granting summary judgment on their Section 504 and ADA claims. They maintain that the district court did not sufficiently address these claims and that genuine issues of material fact remain.

On March 31, 2015, the district court filed a memorandum decision ("Memorandum"), and entered an accompanying order ("Order"). At the end of the Memorandum, the district court stated, "A separate order is being entered herewith affirming the decision of the administrative law judge," and the Order itself only purports to affirm "the order entered by the administrative law judge." Id. at 47-48 (emphasis supplied). As explained above, the ALJ only decided the IDEA issue, did not address the ADA claims, and did not possess jurisdiction over the Section 504 claims.

Although the Memorandum mentions the ADA and Section 504, it does so only in the opening sentence, merely acknowledging that Appellants' action was "brought under" those statutes. J.A. 45. Further, whereas the Memorandum observes that the IEP "complies with applicable law," J.A. 47 n.1, this court has explained the "IDEA and the Rehabilitation Act are different statutes. Whereas IDEA affirmatively requires

18

participating States to assure disabled children a free appropriate public education, [S]ection 504 . . . instead prohibits discrimination against disabled individuals," Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va., 141 F.3d 524, 528 (4th Cir. 1998) (citation omitted)).

Therefore, the basis for the district court's decision on the ADA and Section 504 claims is not apparent. We believe the best course of action is to remand and allow the district court to clarify the reasoning underlying its disposition of Appellants' Section 504 and ADA discrimination, reasonable accommodation, retaliation, and FAPE claims. See Jones v. Plaster, 57 F.3d 417, 421-22 (4th Cir. 1995) (remanding for further proceedings "in order for the district court to clarify its ruling"); see also Q Int'l Courier, Inc. v. Smoak, 441 F.3d 214, 220 n.3 (4th Cir. 2006) ("Although we are not precluded from addressing [questions the district court did not reach], we deem it more appropriate to allow the district court to consider them . . . in the first instance on remand.").

IV.

For the foregoing reasons, we affirm the district court with regard to its IDEA decision, and we remand for further proceedings consistent with this opinion.

AFFIRMED IN PART
AND REMANDED

19